## MARGARET CAMPBELL *vs.* NEW ENGLAND MUTUAL ⸻ FE INSURANCE COMPANY.

An action may be maintained on a policy of life insurance, obtained by a man on his own life, without proving an insurable interest therein in the person for whose benefit it is declared on its face to be made.

If at the trial of an action on a policy of life insurance the judge rules that a representation upon which the policy was issued is material, the insurers cannot except to the exclusion of evidence that it was material.

The burden of proving untrue a representation upon which a policy of life insurance was based is upon the insurers.

A policy of life insurance was declared on its face to be " upon the following condition," that " if the statements made by, or on behalf of, or with the knowledge of," the assured, to the insurers, " as the basis of, or in the negotiations for, this contract, shall be found in any respect untrue, then this policy shall be null and void; " and was issued upon an application in writing, signed by the assured, declaring that he made the statements therein " as the basis of such insurance," and that they were " full, fair and true answers to the questions proposed," and further declaring that he had carefully read the questions and answers, and was aware that any fraudulent or untrue answers, or concealment of fact, or noncompliance with the terms of the policy, would vitiate the insurance. To a question whether he was or had been " subject to or at all affected by any of the following diseases and infirmities," among which were enumerated " bronchitis, consumption, coughs prolonged," and " spitting of blood," he answered, No. *Held,* that this answer was not a warranty, but a representation, which need not be complied with literally, but must be substantially, in all respects material to be disclosed to the insurers to enable them to estimate the risk to be assumed; that, if materially untrue in such respects, it avoided the policy, even if made ignorantly and in good faith; and that, by the form of the policy and application, it was conclusively made material. *Held, also,* that a refusal to instruct the jury in an action on the policy, " that a spitting of blood accompanied by a cough was so far an indication of a diseased condition of the respiratory organs that, if the applicant had suffered from them, he was bound to have so stated to the insurers; " accompanied by an instruction " that repeated instances of spitting of blood of the kind testified to by the defendants' witnesses would be indications of a disease which the assured was bound to state; that it was not necessary that the defendants should prove the existence of any positive organic disease, or that the spitting of blood was of a character to shorten life; that the inquiries were not only as to diseases, but as to infirmities, and certain specified symptoms of disease; and that the defendants were entitled to have them answered fairly and truly; " afforded to the defendants no ground of exception.

If an action is brought upon a policy of life insurance by a person for whose benefit it is declared to be made, but who is not the assured nor the person to whom the policy is in terms made payable; and is defended upon the merits, without presenting to the court at either of the first two trials, or on a motion on which the first verdict is set aside, or at the argument of exceptions taken at the second trial, the objection that the action cannot be maintained in the name of the plaintiff; such objection must be deemed to have been waived, and cannot be taken advantage of at a third trial.

A refusal to rule that, " when a specific fact is sworn to by a witness of fair fame, who is uncontradicted by other testimony or any circumstances in which he may stand, mere negative evidence will not warrant the jury in disregarding his testimony," accompanied by general instructions upon the distinctions between positive and negative evidence, and the weight to be given to each, which are not objected to, affords no ground of exception.

CONTRACT against a mutual insurance company on a policy of insurance made by them to Andrew Campbell upon his life, payable to him, his executors, administrators and assigns, for the benefit of the plaintiff, " upon the following conditions," (among others,) that " if the statements made by, or in behalf of, or with the knowledge of, the said assured, to said company, as the basis of, or in the negotiations for, this contract, shall be found in any respect untrue," then the policy should be null and void.

The declaration alleged the making of the policy (a copy of which was annexed thereto) ; that the plaintiff was the wife of a brother of. the assured; the promise of the defendants to pay the sum insured to the assured, his executors, administrators and assigns, for her benefit ; his death from a natural cause or sickness ; due notice and proof thereof; the subsequent lapse of sixty days·; a request to pay the sum insured to the plaintiff, and the defendants' refusal ; and that they owed her that sum and interest thereon.

The answer admitted the making of the policy, the death of the assured, the notice of death and demand of payment; declared the defendants' ignorance whether the plaintiff was his brother's wife or the person to whom the policy was made payable ; and averred that she had not an insurable interest in his life; and also that the policy was made upon the faith of an application therefor, signed by Andrew Campbell, by the terms of which the statements therein were declared to be the basis of the insurance ; set forth the above condition of the policy ; and alleged that such statements were untrue in that at the time of making the same he had had spitting of blood, prolonged coughs and consumption, and had also long been subject to sudden and frequent attacks of illness of a serious and alarming character, not enumerated in the sixth question in the application, and which he ought to have disclosed in answer to the seventh question therein, and that by reason of such untrue statements the policy was null and void.

In the application (a copy of which was annexed to the answer) Andrew Campbell " proposes to insure " his life with the defend· ants, " and thereby to ·become a member of the company ; an‹

with that view, and as the basis of such insurance, makes the following statements :

"☞ If the applicant writes his answers himself, he will please to answer directly, fully and explicitly. If the agent or examining physician writes down the answers given to him by the applicant, he will please to make explanations where the applicant is in doubt about the meaning and purpose of the question ; and also to put such inquiries as will draw direct and specific answers."

" 6. Whether now, or heretofore, and when, and how long, and to what degree, subject to, or at all affected by, any of the following diseases and infirmities, viz:" " Bronchitis, consumption, coughs prolonged," " disease of the lungs," " spitting of blood." *Answer.* " No." " 7. Has the person had any serious illness, local disease, or personal injury ; and if so, of what nature, and when ? " *Answer.* " No." " 22. Have you carefully read the above questions and the answers thereto ? " *Answer.* " Yes." " 23. Are you aware that any fraudulent or untrue answers, or any concealment of fact, or noncompliance with the terms and conditions of the policy, will vitiate the insurance ? " *Answer.* " Yes."

The application concluded with the statement, " The foregoing are full, fair and true answers to the questions proposed," and was signed by the applicant.

A trial was had in this court at April term 1867, and resulted in a verdict for the plaintiff, which was set aside as against evidence.

At the second trial, at October term 1867, before *Wells*, J., the plaintiff proved that she was the person named in the policy and for whose benefit it was made ; and rested her case ; whereupon the defendants asked the judge to rule that in order to maintain her action she must prove an insurable interest in the life of her brother-in-law · but he declined so to rule.

The defendants then put in evidence the application, and offered testimony to show that whether or not an applicant had ever spit blood, and his statements in relation thereto, were matters materially affecting the inducement of insurance companies

to take the risk, but the judge excluded this testimony as immaterial.

The defendants then called witnesses who testified that the assured, for several years previous to his application, had suffered from a severe cough, which was particularly observable early in the morning and at night, and while coughing had spit blood in their presence, and had called attention to it, and had told them of particular instances of coughing and spitting blood, and had said that his lungs were diseased.

The plaintiff, in rebuttal, called witnesses who testified that the assured was always a healthy man, vigorous in looks and habits, and that they never saw him spit blood or heard him cough or complain of spitting blood, before the date of the application; and also introduced evidence tending to show bias on the part of some of the defendants' witnesses.

The defendants asked the judge to instruct the jury " that the policy is issued upon the basis of the truth of the statements in the application, and the assured takes the risk of the truth of these statements; that if they are in any respect untrue the policy is void, and it makes no difference whether he knew them to be untrue or not." But the judge declined to give the instruction as requested; and modified it by inserting the word " materially " after the word " respect," and by striking out the words " and it makes no difference whether he knew them to be untrue or not; " and also instructed the jury, in this connection, " that repeated instances of spitting of blood, accompanied by a cough of the character testified to by the defendants' witnesses, were, if true, material facts which the applicant was bound to state; but that an untrue statement, innocently made, in regard to a latent disease of which the applicant was unconscious, would not avoid the policy."

The defendants also asked an instruction " that the truth of the statements in the application, and which were in express terms made the basis of the policy, was a condition precedent to the validity of the policy ; and that the burden of proof was upon the plaintiff to show their truth." The judge declined to give this instruction ; and, instead of it, instructed the jury " tha

the plaintiff, upon the production of the policy and proof of the death, had established a *primâ facie* case, and was entitled to recover, unless the defendants defeated her claim by proof of some of the grounds of defence set up in their answer; and that upon this issue the burden of proof was upon the defendants."

The defendants also asked an instruction " that the spitting of blood, accompanied by a cough, was so far an indication of a diseased condition of the respiratory organs, that, if the applicant had suffered from them, he was bound to have so stated to the company in his answers to questions six and seven." The judge declined to give this as prayed for; and modified it by inserting the word " repeated " before the words " spitting of blood ; " and instructed the jury, in this connection, " that repeated instances of spitting of blood, of the kind testified to by the defendants' witnesses, would be indications of disease, which the assured was bound to have stated ; that it was not necessary that the defendants should prove the existence of any positive organic disease, or that the spitting of blood was of a character to shorten life; that the inquiries were not only as to diseases, but as to infirmities and certain specified symptoms of disease; and that the company were entitled to have them answered fairly and truly."

The defendants also asked an instruction " that, if the jury are satisfied that the assured had spit blood before obtaining the policy, under circumstances which excited apprehension in his own mind that it was the result of disease, he was bound to have stated that fact to the company, that they might make inquiry in regard to it." The judge modified this by inserting the word " recently " after the words " spit blood;" and further instructed the jury, upon the defendants' request, that, " if the assured was subject to occasional spitting of blood, accompanied with a cough, he was bound to have stated that fact to the company."

The judge further stated to the jury, " that, as the plaintiff did not attempt to explain or account for the instances of spitting of blood testified to by the defendants' witnesses, but denied the truth of the facts so testified to, it would seem that the only question for them to determine was whether they were satisfied

of the truth of that testimony; and that, if they were satisfied, from all the evidence in the case, that the assured did spit blood at different times, in connection with a cough, as testified to by the defendants' witnesses, their verdict must be for the defendants."

The jury returned a verdict for the plaintiff; and the defendants alleged exceptions.

*T. K. Lothrop & G. W. Baldwin,* for the defendants. 1. The relations of the plaintiff to the insurance company are open to all the objections by force of which wager policies of insurance have been held to be invalid contracts, in *Amory* v. *Gilman,* 2 Mass. 5; *Lord* v. *Dall,* 12 Mass. 118; *Ball* v. *Gilbert,* 12 Met. 397; *Morrell* v. *Trenton Insurance Co.* 10 Cush. 282; *Loomis* v. *Eagle Insurance Co.* 6 Gray, 399. A wager policy is one in which the assured has no interest in the subject matter of the insurance. Practically, this plaintiff was the assured. The man on whose death the policy was payable was merely the possessor of the life insured. The plaintiff had no interest whatever in the continuance of his life, but an interest to the amount of the policy in his death. Hence the highest considerations of public safety apply against her. *Ruse* v. *Mutual Benefit Insurance Co* 23 N. Y. 526. *Wainwright* v. *Bland,* 1 M. & W. 32.

2. Whether or not facts withheld or misrepresented are material for the insurers to know as affecting their inducement to accept a risk is a question for the jury. *Morrison* v. *Muspratt,* 4 Bing. 60. *Lindenau* v. *Desborough,* 8 B. & C. 586. *Daniels* v. *Hudson River Insurance Co.* 12 Cush. 416. *Curry* v. *Commonwealth Insurance Co.* 10 Pick. 535. Being so, evidence as to such materiality must be competent. *Hawes* v. *New England Insurance Co.* 2 Curtis C. C. 229. *Fiske* v. *New England Insurance Co.* 15 Pick. 320. *Valton* v. *National Fund Assurance Co.* 20 N. Y. 32. If incompetent, it can be so only on the ground that it is unnecessary, because the representations of the assured are warranties. But this ruling was asked and refused.

3. The force of the exception to the insertion of the word " material" and to the striking out of the last clause in the first instruction asked by the defendants, must be determined by the

terms of the contract. Statements in an application made as the basis of the policy, and on the faith of which the policy was declared to be made, with a stipulation that if the same were not in all respects true the policy should be void, are warranties; and if any of them, whether material or immaterial to the risk, are untrue, either from design, mistake or ignorance, the plaintiff cannot recover. *Miles* v. *Connecticut Insurance Co.* 3 Gray, 580. *Vose* v. *Eagle Insurance Co.* 6 Cush. 42. *Houghton* v. *Manufacturers' Insurance Co.* 8 Met. 114. *Daniels* v. *Hudson River Insurance Co.* 12 Cush. 416. *Barre Boot Co.* v. *Milford Insurance Co.* 7 Allen, 44. *Hardy* v. *Union Insurance Co.* 4 Allen, 217. *Brown* v. *Cattaraugus Insurance Co.* 18 N. Y. 385. *Chase* v. *Hamilton Insurance Co.* 20 N. Y. 52. *Fowkes* v. *Manchester & London Assurance Co.* 3 Best & Smith, 917. *Cazenove* v. *British Equitable Assurance Co.* 6 C. B. (N. S.) 437. *Anderson* v. *Fitzgerald,* 4 H. L. Cas. 484. *State Insurance Co.* v. *Arthur,* 30 Penn. State, 315. *Sayles* v. *Northwestern Insurance Co.* 2 Curtis C. C. 612. *Maynard* v. *Rhode,* 1 C. & P. 360.

4. The question raised as to the burden of proof seems never to have been adjudged in Massachusetts as to life insurance. In all the reported cases as to fire and marine policies or other contracts the test is whether the untrue statements relied on to avoid a policy are in the nature of conditions precedent or conditions subsequent. If the former, the burden of proof is on the party affirming the contract; if the latter, on the party seeking to avoid it. By applying this test, all the cases which seem unfavorable may be distinguished from the case at bar. See *Paddock* v. *Franklin Insurance Co.* 11 Pick. 237; *Merchants' Insurance Co.* v. *Clapp,* 11 Pick. 56; *Taylor* v. *Lowell,* 3 Mass. 349; *Tidmarsh* v. *Washington Insurance Co.* 4 Mason, 441; *Fiske* v. *New England Insurance Co.* 15 Pick. 310; *Jones Manufacturing Co.* v. *Manufacturers' Insurance Co.* 8 Cush. 82; *Kingsley* v. *New England Insurance Co.* 8 Cush. 393; *Daniels* v. *Hudson River Insurance Co.* 12 Cush. 416; *Orrell* v. *Hampden Insurance Co.* 13 Gray, 433; *Dorr* v. *Fisher,* 1 Cush. 271; *Lothrop* v. *Otis,* 7 Allen, 437; *Jennison* v. *Stafford,* 1 Cush. 168; *Delano* v. *Bartlett,* 6 Cush 364. If it be answered that, when the plaintiff had produced

and proved the policy, the burden shifted upon the defendants to prove the facts they set up in avoidance of it, that is true only when the adverse party, instead of producing proof tending to negative the same proposition of fact established by the *primâ facie* evidence of the party having the burden of proof, proposes to show a distinct proposition which avoids the effect of it. Here the only issue was in relation to the truth of the statements made by the assured, which the plaintiff was bound to maintain. *Powers* v. *Russell,* 13 Pick. 69, 76. *Delano* v. *Bartlett,* 6 Cush. 364. *Burnham* v. *Allen,* 1 Gray, 496. *Morrison* v. *Clark,* 7 Cush. 213. *Central Bridge* v. *Butler,* 2 Gray, 130. *Sohier* v. *Norwich Insurance Co.* 11 Allen, 336. Applying this rule, the only question is whether Andrew Campbell's statements were in the nature of a condition precedent; and, being warranties, they were so. *Craig* v. *United States Insurance Co.* 1 Pet. C. C. 410. This whole subject has been discussed in England in connection with the right to open and close. *Hucknan* v. *Fernie,* 3 M. & W. 505. *Geach* v. *Ingall,* 14 M. & W. 95. *Leete* v. *Gresham Insurance Society,* 15 Jur. 1161.

5. The defendants objected to the insertion of the word " repeated " before the words " spitting of blood " in one instruction, and of the word " recently " after the words " spit blood " in another. If Andrew Campbell's statements were warranties, that fact is decisive; but even if they were only representations, they were materially untrue if upon any single occasion before obtaining the policy, whether " recently " or not, he " had spit blood under circumstances which excited apprehension in his own mind that it was the result of disease." *Geach* v. *Ingall,* 14 M. & W. 95. *Daniels* v. *Hudson River Insurance Co.* 12 Cush. 416. The concealment of such a fact would vitiate the policy even if no specific question had been put to him. *Vose* v. *Eagle Insurance Co.* 6 Cush. 42. *Bebee* v. *Hartford Insurance Co.* 25 Conn. 51.

6. Instructions to the jury should be given with special caution in cases like this, because their natural sympathies lead them to favor the individual as against the corporation. *Dean* v. *American Insurance Co.* 4 Allen, 103.

Campbell *v.* New England Mutual Life Insurance Company.

*H. G. Hutchins,* for the plaintiff.

WELLS, J.* The policy in this case is upon the life of Andrew Campbell. It was made upon his application; it issued to him as "the assured;" the premium was paid by him; and he thereby became a member of the defendant corporation. It is the interest of Andrew Campbell in his own life that supports the policy. The plaintiff did not, by virtue of the clause declaring the policy to be for her benefit, become the assured. She is merely the person designated by agreement of the parties to receive the proceeds of the policy upon the death of the assured. The contract, (so long as it remains executory,) the interest by which it is supported, and the relation of membership, all continue the same as if no such clause were inserted. *Fogg* v. *Middlesex Insurance Co.* 10 Cush. 337, 346. *Sanford* v. *Mechanics' Insurance Co.* 12 Cush. 541. *Hale* v. *Mechanics' Insurance Co.* 6 Gray, 169. *Campbell* v. *Charter Oak Insurance Co.* 10 Allen, 213. *Forbes* v. *American Insurance Co.* 15 Gray, 249. It was not necessary therefore that the plaintiff should show that she had an interest in the life of Andrew Campbell, by which the policy could be supported as a policy to herself as the assured. The defendants raise no question as to her right to bring this action, if the policy can be supported for her benefit.

The remaining exceptions mostly depend upon the question whether the statements made in the application, by way of answers to interrogatories, are to have the effect of warranties, or to be regarded as representations only. The rulings and instructions at the trial were based upon the assumption that these answers were to be treated as representations, and cannot be sustained upon any principle of law applicable to warranties.

A warranty, in insurance, enters into and forms a part of the contract itself. It defines, by way of particular stipulation, description, condition, or otherwise, the precise limits of the obligation which the insurers undertake to assume. No liability can arise except within those limits. In order to charge the insurers, therefore, every one of the terms which define their ob-

* HOAR and FOSTER, JJ., did not sit in this case.

ligation must be satisfied by the facts which appear in proof. From the very nature of the case, the party seeking his indemnity, or payment under the contract, must bring his claim within the provisions of the instrument he is undertaking to enforce. The burden of proof is upon the plaintiff to present a case in all respects conforming to the terms under which the risk was assumed. It must be not merely a substantial conformity, but exact and literal; not only in material particulars, but in those that are immaterial as well.

A representation is, on the other hand, in its nature, no part of the contract of insurance. Its relation to the contract is usually described by the term " collateral." It may be proved, although existing only in parol and preceding the written instrument. Unlike other verbal negotiations, it is not merged in nor waived by the subsequent writing. This principle is in some respects peculiar to insurance, and rests upon other considerations than the rule which admits proof of verbal representations to impeach written contracts on the ground of fraud. Representations to insurers, before or at the time of making a contract, are a presentation of the elements upon which to estimate the risk proposed to be assumed. They are the basis of the contract; its foundation, on the faith of which it is entered into. If wrongly presented, in any respect material to the risk, the policy that may be issued thereupon will not take effect. To enforce it would be to apply the insurance to a risk that was never presented. *Kimball* v. *Ætna Insurance Co.* 9 Allen, 540. But, when the insurer seeks to defeat a policy upon this ground, his position in court is essentially different from that which he may hold upon a policy containing a like description of the risk as one of its terms. It is sufficient for the plaintiff to show fulfilment of all the conditions of recovery which are made such by the contract itself. The burden is then thrown upon the defendant to set forth and prove the collateral matters upon which he relies.

There is also another distinction very important in its practical application. As this defence relates entirely to the substance and not to the letter of the contract, it can only prevail by proof

of some representation material to the risk, and that it was un-true in some material particular.

When statements or engagements on the part of the insured are inserted, or referred to in the policy itself, it often becomes difficult to determine to which class they belong. If they ap-pear on the face of the policy, they do not necessarily become warranties. Their character will depend upon the form of ex-pression used, the apparent purpose of the insertion, and some-times upon the connection, or relation to other parts of the in-strument. If they are contained in a separate paper, referred to in such a manner as to make it a part of the contract, the same considerations of course will apply. But if the reference ap-pears to be for a special purpose, and not with a view to import the separate paper into the policy as a part of the contract, the statements it contains will not thereby be changed from repre-sentations into warranties. It is perhaps needless to add that verbal representations can never be converted into warranties otherwise than by being afterwards written into the policy.

In considering the question whether a statement forming a part of the contract is a warranty, it must be borne in mind, as an established maxim, that warranties are not to be created nor extended by construction. They must arise, if at all, from the fair interpretation and clear intendment of the words used by the parties. *Daniels* v. *Hudson River Insurance Co.* 12 Cush. 416, 424. *Blood* v. *Howard Insurance Co.* 12 Cush. 472. *Jeffer-son Insurance Co.* v. *Cotheal*, 7 Wend. 72. *Forbush* v. *Western Massachusetts Insurance Co.* 4 Gray, 337, 340. When, therefore, from the designation of such statements as " statements " or as " representations," or from the form in which they are expressed, there appears to be no intention to give them the force and effect of warranties, they will not be so construed. *Houghton* v. *Man-ufacturers' Insurance Co.* 8 Met. 114. *Jones Manufacturing Co* v. *Manufacturers' Insurance Co.* 8 Cush. 83. *Towne* v. *Fitch-burg Insurance Co.* 7 Allen, 51. ⹀ Phil. Ins. §§ 871, 893. 3 Kent Com. (6th ed.) 282.

The application is, in itself, collateral merely to the contract of insurance. Its statements, whether of facts or agreements,

belong to the class of " representations." They are to be so construed, unless converted into warranties by force of a reference to them in the policy, and a clear purpose, manifest in the papers thus connected, that the whole shall form one entire contract. When the reference to the application is expressed to be for another purpose, or when no purpose is indicated to make it part of the policy, it will not be so treated. *Jefferson Insurance Co.* v. *Cotheal,* 7 Wend. 72. *Snyder* v. *Farmers' Insurance & Loan Co.* 13 Wend. 92. In *Daniels* v. *Hudson River Insurance Co.* 12 Cush. 423, the court (Shaw, C. J.) say: " If by any words of reference the stipulations in another instrument, such as the proposal or application, can be construed a warranty, it must be such as make it in legal effect a part of the policy."

In every case cited in support of the defendants' position there was an express reference in the policy, which made the application a part of the contract. The one most relied on, and claimed to be especially applicable to the facts of the present case, is that of *Miles* v. *Connecticut Insurance Co.* 3 Gray, 580. In that case it was declared in the policy itself to be expressly " understood and agreed to be the true intent and meaning hereof that, if the proposal, answer and declaration made by ' the assured,' and upon the faith of which this agreement is made, shall be found in any respect untrue, then and in such case this policy shall be null and void." In that proposal the assured declare (among other things) that the answers and statements therein made are correct and true, and " agree that the answers given to the following questions, and the accompanying statements, and this declaration, shall be the basis and form part of the contract or policy between them and the said company."

Two marked features in that case distinguish it from the present. First, the clause in the policy relates distinctly and exclusively to the paper called " the proposal, answer and declaration." Second, when the two papers are thus brought together there is a distinct agreement, not only that the statements are true and correct, but that they are to form a part of the contract.

In the present case the policy contains no reference to any

application, nor to any declaration or statement in writing made or to be made by the assured. The only clause in the policy which can have any bearing upon the question, when disconnected from other provisions of a diverse character, reads as follows, namely : " Or if the statements made by, or in behalf of, or with the knowledge of the said assured to said company, as the basis of, or in the negotiations for this contract, shall be found in any respect untrue," " then and in each of said cases this policy shall be null and void."

It is clear that this is not a reference to any particular instrument or paper; but it includes any and all statements, whether oral or written. The defendant however contends that, a written application having been made in this case, which by its own terms declares the statements therein contained to be made " as the basis of " the insurance applied for, the policy will attach to that application as containing the " statements " referred to, and thus constitute an express warranty. We are far from being ready to concede that the reference is sufficiently definite to warrant the bringing of the two papers together for the purpose of giving a construction to the contract. But even if the application may properly be resorted to for aid in the construction, it contains no agreement and no words to indicate that its statements are to be taken as warranties ; nor that they are to form part of the contract. The designation of " statements," both in the application and in the policy, comports with the idea of representations rather than of warranties. Representations are " the basis of " the contract of insurance; and such these " statements " are declared to be. The effect which is to result from their untruth results also from the untruth of representations. It is true that misrepresentations defeat a policy without any provision to that effect in the policy itself. But the insertion of such a provision does not therefore require a construction which shall give them a different force or character. The disjunctive enumeration of the various conditions under which misstatements should render the policy void indicates a sufficient reason for inserting the clause, if they are to be regarded as representations only. But it seems wholly inconsistent with an intent to

create warranties. Upon that supposition the clause can take effect as intended, only in case a written statement is made, and must fail as to all other statements; or else it must be construed to bear a double aspect. There is nothing in the clause, or elsewhere in the policy, to indicate that statements in writing were intended to be put upon any different footing from oral statements made in the course of the negotiations leading to the contract. It seems to us therefore to accord best with the form and apparent purpose of this clause to construe all statements so made, whether oral or written, as representations.

The clause in the policy is in the form of a condition, and is grouped with other provisions of various character and purpose under the general head of " conditions." But the use of the term " conditions " does not always carry the legal consequences which attach to that word in its technical meaning. The clause must be taken as a part of the contract, and must have such an application as its fair interpretation, with the other parts of the contract, requires; but neither the form, nor the subject-matter, nor its associate provisions under the head of "conditions," indicate that it was intended to give to this clause the technical character of a warranty, or a condition precedent. The plaintiff is not bound to go beyond the written policy and show what statements were made, in order to prove that they were true. The burden is upon the defendant, notwithstanding this proviso is written in the policy in the form of a condition, to set forth and establish the facts relied upon to defeat the contract upon that ground. *Jones Manufacturing Co.* v. *Manufacturers' Insurance Co.* 8 Cush. 83. *Kingsley* v. *New England Insurance Co.* 8 Cush. 393. *Hodsdon* v. *Guardian Insurance Co.* 97 Mass. 144. *Haskins* v. *Hamilton Insurance Co.* 5 Gray, 432. *Mulry* v. *Mohawk Valley Insurance Co.* 5 Gray, 541. *Cluff* v *Mutual Benefit Insurance Co.* 13 Allen, 308. By statements " in any respect untrue " must be intended statements made and received as inducement to the contract; that is, material and proper to be disclosed to the insurers to enable them to estimate the risk proposed, and determine upon the propriety of entering into the contract.

Whether or not the applicant had been subject to or affected by the disease or infirmity of " spitting of blood," and his statements in relation thereto, were held by the court at the trial to be material ; and therefore it was unnecessary for the defendant to prove that they were in fact " matters materially affecting the inducement of insurance companies to take the risk."    The testimony upon this point was not offered to show that particular facts, to which other witnesses had testified, were material as indications of disease, and therefore that the answer was a material misrepresentation.    The offer was to prove the materiality of the representation, not the materiality of the facts relied upon to show the representation to be untrue.    The ruling of the court that the representations relied on were material, and therefore that no proof of materiality need be made, was a ruling in favor of the defendants, and is not open to exception.

The answers contained in the application being in the nature of representations only, the question is of their substantial and not their literal truth.    To defeat the policy they must be shown to be materially untrue, or untrue in some particular material to the risk.    The instruction asked for was therefore rightly modified in this respect.

We understand it to be a question for the jury to determine, whether the facts which appear in evidence are so far inconsistent with the answers relied on in the application, as to establish a material misrepresentation.    The defendant, however, asked for instructions in several forms, with a view to obtain the ruling of the court upon the evidence, as matter of law.    The court did instruct the jury that the repeated spitting of blood, accompanied by a cough, was so far an indication of disease that if the applicant had suffered from it he was bound to have so stated ; that if he was subject to occasional spitting of blood, accompanied by a cough, he was bound to have stated that fact ; and that the same was true if he had spit blood in a single instance, if recent, and such as to excite apprehension in his own mind that it was the result of disease.

Considering the various forms and degrees in which the spit

ting of blood with a cough may manifest itself, the uncertainty as to its source and cause, and the character of the facts which the testimony in this case tended to prove, we cannot say that the rulings of the court ought to have gone farther than this in favor of the propositions of the defendant. The mere raising of a small quantity of blood with a cough in a single instance is not necessarily an indication of disease, or a material circumstance, so that such an occurrence, however slight, at any time during the previous life of the applicant, would make his answer such a misrepresentation as to require that the court should so declare it as a matter of law. The propositions of the defendant could not properly be given to the jury without qualification. It was for the jury to determine upon the evidence, and in view of all the circumstances under which the spitting of blood by Andrew Campbell was testified to before them, whether his representations in regard to it, in his answers to the inquiries of the company, varied from the truth in any respect material to the risk. It was for them to judge not only of the fact of variance, but of its extent and materiality.

The instruction " that an untrue statement innocently made, in regard to a latent disease, of which the applicant was unconscious, would not avoid the policy," as a general statement of the law applicable to representations in insurance contracts, was incorrect. An untrue statement or denial of a material fact, preceding or contemporaneous with the contract of insurance, prevents the policy that is based upon it from taking effect as a contract, whether the statement was made ignorantly and in good faith or otherwise. 3 Kent Com. (6th ed.) 282. *Curry* v. *Commonwealth Insurance Co.* 10 Pick. 535. *Wilbur* v. *Bowditch Insurance Co.* 10 Cush. 446. *Kimball* v. *Ætna Insurance Co.* 9 Allen, 540. *Sawyer* v. *Coasters' Insurance Co.* 6 Gray, 231. 1 Arnould on Ins. 494, 495, and cases cited in note.

The spitting of blood is necessarily so obvious to the person affected by it, that at first thought it would seem impossible that the jury could be misled by this misdirection. But we cannot make it certain that it might not, in some way, have affected their minds in applying the testimony to the questions that were

open. The denial of Andrew Campbell is that he had been " subject to or at all affected by any of the following diseases and infirmities," among which are consumption and disease of the lungs, as well as spitting of blood. Both of these are relied on by the defendants. The jury may have been satisfied that Andrew Campbell was affected by consumption, a disease often latent and deceptive for a long time, but that he was unconscious of it; or they may have been satisfied that he was not aware that the cough and spitting of blood, to which he was subject, did in reality amount to what was intended by the inquiry in the application, and so answered the inquiry as he did, innocently and in good faith. And they may have been led by the instruction to suppose that, if they arrived at those conclusions, the answer, though found to be untrue in fact, would not be such a false statement as would avoid the policy.

As it is impossible to make it certain that some such effect may not have been produced upon the minds of the jurors by this instruction, and as the instruction was in itself incorrect, it seems to be necessary that the verdict should be set aside, and the *Exception upon this single point is sustained.*

A third trial was had at April term 1868, resulting in a disagreement of the jury. At the beginning of the fourth trial at October term 1868, before *Colt*, J., the defendants moved for a nonsuit, because the plaintiff had not set up in her declaration any right of action against the defendants. But the motion was refused, because it appeared that this objection had not been made until the beginning of the third trial, when it was overruled by the presiding judge. The plaintiff proved that she was the wife of the brother of the assured, and the person named in the policy as the one for whose benefit it was made; and, upon cross-examination, stated that she was not the administratrix of the estate of the assured; and rested her case. The defendants then renewed their motion for a nonsuit, because she had not set up or shown any right of action upon the policy, and by her own showing had no right of action. But the judge refused the motion.

The defendants put in evidence the application; and **were** allowed to amend their answer by specially setting up bronchitis as a ground of defence; and called two physicians as witnesses, who testified that they had treated the assured, one of them for chronic bronchitis, and the other for " bronchial difficulty," before the date of the application. They further introduced, against the plaintiff's objection, the testimony of several medical experts, some of them examiners for other life insurance companies, to the effect that no method of examining the lungs practised by physicians is satisfactory to ascertain whether a patient has previously spit blood; that he may have done so often and in large quantities without leaving any trace thereof on the lungs apparent upon such an examination, unless such spitting has been very recent; and that for ascertaining the symptom of spitting blood physicians must rely chiefly on the statements of the patient himself. And, in reply to the defendants question " whether or not the statements of the applicant, that he has or has not been afflicted with the disease or infirmity of spitting blood, are matters material as affecting the inducement of insurance companies to take the risk," these witnesses were permitted to testify, also against the plaintiff's objection, " that any such previous bleeding was very material for insurers to know; and that if repeated and mixed with phlegm and accompanied by a cough, it would be of vital consequence to the insurers to know, and such knowledge would lead to the rejection of the risk." One of the physicians further testified that bronchitis was an inflammation of the bronchial tubes, and that these tubes ramify into the lungs.

Evidence was also introduced by each party similar to that introduced at the second trial, as stated *ante*, 384.

The defendants asked the judge to rule that, " when a specific fact is sworn to by a witness of fair fame, and who is uncontradicted by other testimony, or any circumstances in which he may stand, mere negative evidence will not warrant the jury in disregarding his testimony." The judge declined to give this instruction, and the defendants excepted to his refusal; but he gave general instructions in this connection, in regard to the dis-

tinctions between positive and negative evidence, and the weight to be given to each, which were not objected to.

The defendants further asked the judge to instruct the jury as follows: " The statements made in the application for insurance, in reply to specific inquiries in regard to the previous health of the applicant, are material to the insurers to enable them to estimate the risk proposed, and determine upon the propriety of entering into the contract; and, if they are in any respect untrue, the policy is void." The judge declined to give the instruction as prayed for; and modified it by prefixing the words, " The jury are to judge upon all the evidence whether;" and by striking out the last clause, and adding in place thereof the words, " and if they find them so material, and find them untrue, the plaintiff cannot recover." To this the defendants alleged exceptions.

The defendants also asked the following instruction : " If Andrew Campbell had suffered from chronic bronchitis and been treated for that disease by physicians previously to his application for insurance, it was a symptom of a tendency to disease in the breathing apparatus and lungs, which he was bound to have stated to the company." The judge declined to give this as prayed for ; and modified it by inserting before the words " it was a symptom," the words, " and the jury are of opinion that;" and by striking out the last ten words, and adding in place thereof the words " and was material in the sense stated in the first instruction asked, he was bound to have stated the fact to the company." And to this also the defendants alleged exceptions.

The jury returned a verdict for the plaintiff; and the rulings and instructions above stated were reported for the revision of the full court, and the case was argued before all the judges on the 22d of March 1869.

*D. Foster & G. W. Baldwin*, ( *T. K. Lothrop* with them,) for the defendants.

*H. G. Hutchins*, for the plaintiff.

GRAY, J. 1. The first objection now presented is to the right of the plaintiff to maintain this action in her own name.

We are not prepared to hold that the statement in the an-

swer, that the defendants are ignorant whether the plaintiff is the person to whom the policy is made payable, covers anything except the plaintiff's identity in fact with the person for whose benefit the policy is declared on its face to be made. In the view which we take, it is not necessary to consider that question; and it may be assumed, as argued for the defendants, that the plaintiff's right to maintain this action was not duly averred in the declaration, and therefore, even if not denied in the answer, might have been contested by the defendants at the trial, or, if judgment had been rendered against them on default, by writ of error. *Tarbell* v. *Gray*, 4 Gray, 444. *Hollis* v. *Richardson*, 13 Gray, 392.

The conclusive reply to this objection is, that the defendants, by their previous conduct of the case, have waived all right to take advantage of it. Whenever a defendant, without demanding judgment on a technical or formal defect apparent on the face of the writ, goes to trial on the merits, he is held to have waived such defect, and cannot afterwards revive it. This rule has been applied to the want of such a seal, indorser, declaration or service as is required by law, and even of the teste prescribed by the Constitution. *Clark* v. *Montague*, 1 Gray, 448, 449, and cases cited. So where one of two joint creditors assigned his share to the other, vesting in him the whole beneficial interest in the debt, and an action at law was afterwards brought in the name of the latter only, and was referred to arbitration under a rule of court, it was held that the nonjoinder of the other was waived. *Austin* v. *Kimball*, 12 Cush. 485.

In the present case, the plaintiff, though not the assured, was the person for whose benefit the policy was made, and was therefore the owner of the entire equitable interest, and might have maintained an action upon it in the name and without the consent of the administrator, or, if the latter had collected the amount of the policy, might have sued him for the proceeds Gen. Sts. *c.* 58, § 62. *Grover* v. *Grover*, 24 Pick. 261. *Burroughs* v. *State Assurance Co.* 97 Mass. 359. *Gould* v. *Emerson* March, 1868. The plaintiff had the equitable interest in the policy, although not the title to support an action at law in her

own name against the insurers. The objection now made goes to the foundation of the action, and, if valid and seasonably taken, would have rendered the other grounds of defence immaterial. Yet the defendants did not present it to the court on either of the first two trials, or upon the motion on which the first verdict was set aside, or at the argument of the exceptions taken at the second trial. By thus repeatedly contesting the plaintiff's claim upon the merits, and putting her to great trouble and expense in proving her case, they must be held to have waived the right to suggest at the third trial for the first time a defect apparent upon the face of the writ and declaration, and touching only the name of the formal plaintiff.

2. The defendants have no just ground of exception to the refusal of the presiding judge to rule as requested upon the comparative effect of negative evidence and positive testimony; because it is not true as matter of law that negative evidence may not be sufficient in fact to counterbalance the positive testimony of a single witness; and because the report states that instructions were given to the jury as to the distinctions between positive and negative evidence and the weight to be given to each, which were not objected to, and which must be presumed to have been correct.

3. It was held, upon much consideration, when this case was previously before us, that the statements made in the written application as the basis of the contract of insurance, not being inserted in the policy, nor in terms made part of it, were not warranties, but representations only; that the burden of proving them to be untrue was upon the insurers; that they need not be complied with literally; but must be substantially, in all respects material to be disclosed to the insurers to enable them to estimate the risk to be assumed; and that, if materially untrue in such respects, they avoided the policy, even if they were made ignorantly and in good faith.

But one point, not then adjudged, and now presented, requires particular examination. It had been ruled at the former trial that the answers of the assured upon the point whether he had been affected by the disease or infirmity oᶠ " spitting of blood"

were material statements, and that repeated instances of the spitting of blood by him, accompanied by a cough, were materia. facts to be disclosed to the insurers; and as that ruling was in favor of the defendants, its correctness was not brought before us upon their exceptions.

At the recent trial, the presiding judge declined to rule, as requested by the defendants, that the statements made in the application, in reply to specific inquiries, in regard to the previous health of the applicant, were material to the insurers to enable them to estimate the risk proposed and determine upon the propriety of entering into the contract; and that if the assured had suffered from chronic bronchitis and been treated for that disease by physicians previously to his application for insurance, it was a symptom of tendency to disease in the breathing apparatus and lungs, which he was bound to have stated to the insurers; but left it to the jury to judge, upon all the evidence, not only whether this was such a symptom, and whether each of the statements was true, but also whether they were material, in the sense above stated. Another verdict having been returned for the plaintiff, and these rulings and instructions having been unfavorable to the defendants, the question of their correctness is now presented for adjudication.

The fact that the defendants also attempted, and were allowed, against the plaintiff's objection, to introduce evidence tending to prove that the representations were material in fact, does not prevent them from relying upon their further position that they had been conclusively made material in law by the form of the transaction between the parties at the time of entering into the contract.

It is true that a representation need not, like a warranty, be strictly and literally complied with, but only substantially and in those particulars which are material to be disclosed to the insurers to enable them to determine whether they will enter into the contract; and that, where the question of the materiality of such particulars depends upon circumstances, and not upon the construction of any writing, it is a question of fact to be determined by the jury. But where the representations upon

which the contract of insurance is based are in writing, their interpretation, like that of other written instruments, belongs to the court; and the parties may, by the frame and contents of the papers, either by putting representations as to the quality, history or relations of the subject insured into the form of answers to specific questions, or by the mode of referring to them in the policy, settle for themselves that they shall be deemed material; and, when they have done so, the applicant for insurance cannot afterwards be permitted to show that a fact, which the parties have thus declared material to be truly stated to the insurers, was in fact immaterial, and thereby escape from the consequences of making a false answer to such a question.

Upon this principle, it has repeatedly been affirmed by this court in cases of fire insurance, that, although the particular nature of the assured's title in the property insured need not be stated unless inquired about by the insurers, yet a substantially untrue answer to a question put to him by them in relation to his title would avoid the policy, without regard to the mode in which the application was referred to in the policy, or to the existence or nonexistence of a lien on the property in favor of the insurers. *Locke* v. *North American Insurance Co.* 13 Mass. 68. *Strong* v. *Manufacturers' Insurance Co.* 10 Pick. 45. *Fletcher* v. *Commonwealth Insurance Co.* 18 Pick. 421. *Davenport* v. *New England Insurance Co.* 6 Cush. 340. *Clark* v. *New England Insurance Co.* Ib. 348. *Hayward* v. *New England Insurance Co.* 10 Cush. 444. *Draper* v. *Charter Oak Insurance Co.* 2 Allen, 573, 574. *Towne* v. *Fitchburg Insurance Co.* 7 Allen, 53.

The principle is equally applicable to cases of life insurance. *Vose* v. *Eagle Insurance Co.* 6 Cush. 49. In *Anderson* v. *Fitzgerald*, 4 H. L. Cas. 484, a policy of life insurance provided that " if any circumstance material to this insurance shall not have been truly stated, or shall have been misrepresented or concealed, or shall not have been fully and fairly disclosed and communicated to the said company, or if any fraud shall have been practised on the said company, or any false statements made to them in or about the obtaining or effecting of this insurance, this policy shall be null and void." The assured had signed a " proposal

and statement," (not otherwise referred to in the policy,) the particulars mentioned in which he thereby declared should form the basis of the contract between the assured and the company, and that, if there should be any fraudulent concealment or untrue allegation contained therein, or any circumstance material to the insurance should not have been fully communicated to the company, or if there should be any fraud or misstatement, the policy should be void; and which contained a great number of questions required to be answered, including the following: "Did any of the party's near relations die of consumption or any other pulmonary complaint?" "Has the party's life been accepted or refused at any office?" To each of these the applicant answered, "No." The house of lords, in accordance with the opinion of eleven English judges as delivered by Baron Parke, and reversing the judgment of the Irish courts, unanimously held that these answers, if false, avoided the policy, and that it was a misdirection to leave it to the jury to say whether they were material as well as false, and to instruct them that, if they were not material, the insurers were liable. Baron Parke observed, "This question does not appear to us to turn upon the well-known distinction between warranties and representations, laid down by Lord Mansfield, nor upon the point whether the declaration above mentioned was either a part of the contract binding between the parties independent of the policy, or meant to be referred to by it. The proviso is clearly a part of the express contract between the parties, and on the noncompliance with the condition stated in the proviso the policy is unquestionably void." And, after commenting on the other clauses of the proviso, he said, "Lastly, it prohibits every false statement whatever, whether in matters actually material or immaterial, and leaves no room for dispute whether the particular matter to which it related was material or not, (which in the case of a dispute a jury would have to decide,) leaving the company to determine entirely for itself what matters it deems material and what not." Lord Chancellor Cranworth said "Whether certain statements are or are not material, where parties are entering into a contract of life assurance, is a matter

upon which there must be a divided opinion. Nothing therefore can be more reasonable than that the parties entering into that contract should determine for themselves what they think to be material; and, if they choose to do so, and to stipulate that unless the assured shall answer a certain question accurately, the policy or contract which they are entering into shall be void, it is perfectly open to them to do so, and his false answer will then avoid the policy. Now it appears to me that that is precisely what has been done here. The parties entering into the insurance have so stipulated. ' The basis of our contract shall be your answering truly these two questions.' There were a great many others; but, putting those aside, they say, ' The basis of the contract between us shall be that you shall answer truly these two questions, and if you do not answer them truly, the policy shall be void.' "

The case at bar falls within the same principle and is governed by the same reasons. The policy is expressed to be upon condition that, if the statements made by the assured to the com pany, as the basis of this contract, " shall be found in any respect untrue, this policy shall be null and void." And the assured declares in his application that he makes the statements therein " as the basis of such insurance," and that they " are full, fair and true answers to the questions proposed." To the questions, " Have you carefully read the above questions and the answers thereto ? " and " Are you aware that any fraudulent or untrue answers, or any concealment of fact, or noncompliance with the terms and conditions of the policy, will vitiate the insurance ? " he answers, " Yes." And to the question, " Whether now or heretofore, and when, and how long, and to what degree, subject to, or at all affected by, any of the following diseases and infirmities, namely," " bronchitis; consumption; coughs prolonged; " " disease of the lungs; " and " spitting of blood ? " he answers, " No."

Whether a form containing so many and so minute questions as this application does is suitable to be used by insurers of lives, or safely to be adopted by those applying for such insurance, is a question which the parties must determine for themselves

before completing their contract. When that has been once completed, the words used must receive their legal interpretation and effect. And whether such a provision as this policy contains could be held to exclude either, as suggested by Baron Parke in *Anderson* v. *Fitzgerald*, statements of matters to the disparagement of the applicant and tending to render his life less insurable, or, as suggested by Lord St. Leonards in the same case, answers to merely impertinent and irrelevant questions, it is not in this case necessary to consider.

The subjects of all the representations with which we now have to deal were bodily infirmities and diseases of the assured, which the court can see might reasonably be regarded by the insurers as material to be disclosed to enable them to judge of the risks to be undertaken; and the form of the policy and application shows that they did so regard them. The only question for the jury on this branch of the case therefore was whether these representations were substantially untrue; that is to say, whether at or before the time of making the application the assured actually had either of these diseases or infirmities; and, if they found that he had, the policy was void, and the plaintiff could not recover. Applying this rule to the evidence stated in the report, it was for the jury to decide whether "chronic bronchitis" or "bronchial difficulty," or any other bodily affection or condition to which the assured was found by them to have been subject, amounted to bronchitis, consumption, disease of the lungs, or some other of the infirmities stated in the application and relied on by the defendants; and whether the spitting of blood by him, if proved to have taken place, was under such circumstances as to indicate disease in his throat, lungs, air passages or other internal organs. But it was not within the province of the jury, under the guise of determining whether the statements of the applicant were materially false, or untrue in some particulars material to the risk, to find that diseases and infirmities were not material to be disclosed, which the parties had by the form of the contract of insurance and of the contemporaneous written application conclusively agreed to consider material. In the words used by this court, in delivering judg

ment in *Davenport* v. *New England Insurance Co.* 6 Cush. 341, 342, " It is manifest that the defendants deemed this information material; and they put the direct question, and it was a proper and practical question ; and it was material that the assured should answer it truly. The assured, having given an untrue answer, whether by accident, mistake or design, it matters not, to a direct, plain and practical question, cannot now be heard to say it was immaterial."

The instructions now reported submitted to the jury not merely whether the statements in question were untrue, but whether they " were material to the insurers to enable them to estimate the risk proposed, and determine upon the propriety of entering into the contract," and being erroneous in this respect, the verdict must be set aside and a *New trial ordered.*