By the Court.—Garvin, J.
This action is brought by the daughter of E. H. Warner, who himself procured his life to be insured for $10,000. The defendants insist that inasmuch as the loss is payable to the assured, his executors, administrators and assigns, the plaintiff cannot maintain this action. The parties are bound by the contract found in the policy. The defendants agree, in consideration of the premium paid and to be paid, to insure him in the sum of $10,000 for the period of his natural life ; and the defendants agree, sixty days after notice and proof of his death, to pay the assured, his executors, &c., the sum assured. This is expressed on the face of the policy! to be for plaintiff’s benefit. If “assured” means the] plaintiff, she can maintain this action. The objection is( put upon the language of the policy and its legal import, j Let us see. It is for her benefit. No one can recover the sum assured until after his death. Subsequent to that 1 event he cannot sue. The fruits of the contract are solely \ hers. Upon these facts she certainly can maintain the action, unless there is some, legal rule which prevents it. J She is the party in interest. The meaning of the term “assured” is to be derived from the connection. In. reinsurance it is applied to the party that has already taken a risk as insurer; not to the assured in the original policy (Carrington v. Commercial Ins. Co., 1 Bosw., 152). In this case, not to the person whose life is insured, but to the plaintiff, for whose benefit it was made. The father made the contract. The daughter was to have the fruits. Thus, in terms it must refer to the plaintiff, and cannot be applied to the deceased. But it is said “his,” immediately following “assured,” qualifies and controls the *349 meaning. This is plausible and ingenious, and upon the argument made some impression upon my mind. But I think it is overturned both by reason and authority. In Church v. Hubbait (2 Crunch, 187), the objection was taken that the action was brought in the name of John B. Church, Jr., when the contract was made with John B. Church. Justice Cushing, who tried the case at circuit, says: “From the evidence it is plain the policy was for the son; the property of ship and cargo is proved to be in the plaintiff thus establishing the principle that where there are divers persons answering to the description of the assured, the policy is applied to the interest of the party for whom it was intended (1 Phill. on Ins., § 411). It is also la'd down in Reynolds on Life Insurance (§ 22), that the “assured” is the person who is to receive the benefit of the insurance. We must therefore assume the promise was to pay the plaintiff, which brings the case within all the authorities. The contract was with Warner, whose life was insured for her benefit, and the promise is to pay her. The action is properly brought in her name (Lawrence v. Fox, 20 N. Y., 268), but whether this is so or not, the plaintiff is the real party in interest, and can maintain the action (Code, § 111). The insurance was effected by Warner. He applied for it, paid the premium, took all the initiatory steps for proving it. It was delivered to Warner, and nothing is clearer than that Warner could make the loss payable to whom he pleased. He did so, making it payable to her. Therefore, the question of whether she had an insurable interest in the life of her father, does not and cannot arise. Any^person has the right to insure his own life, though he does it for the benefit of another (Rawls v. American Life Ins. Co., 27 N. Y., 282). He may have the loss payable to the assured, or to his own assignee or appointee; and whichever be the form, his interest in his own life is the same. There is, therefore, no question as to her interest in his life. That question does not arise (13 N. Y. [3 Kern.], 31; 23 N. Y., 516). A policy of insurance effected upon one’s own life may be disposed of as the insured sees fit. It is not ma *350 terial that the beneficiary, appointee, or assignee have an interest in the life of the insured at the inception of the policy. A valid policy once made, it so remains if the conditions are complied with (20 N. Y, 32). On the termination of the life, the sum assured is payable (27 N. Y, 290).
This brings us to the main question in the case, and the one which the defendants urged upon the argument with great firmness and resolution. It is claimed by the defendants that Warner misrepresented the facts as to his August sickness, and untruly represented that certain of his organs properly performed their functions. These misrepresentations are based upon a statement made by Warner to the company in his application, that he had never had any serious illness, except fever seven years before, and that the functions of the abdominal and urinary organs were properly performed. The last statement was made in answer to a question put by the examining physician.
•It can hardly be said, in regard to the last statement, that it was a misrepresentation, taking into account all the evidence in the case. The company did not rely upon what Warner told the doctor, but on the doctor’s report, which is supposed to embody his opinion, not the patient’s statements. The defendants could have put the questions and taken Warner’s answers, but their object and design was to obtain a professional opinion. As such, his answers must be taken and regarded by us. It was the doctor’s duty to make such personal examination of Warner as to satisfy himself, as he was answering to the defendants. This we must presume he did. He was in the defendants’ employ, and was bound conscientiously—as he doubtless did—to discharge his trust. The doctor says (after describing his height and complexion), “he had a healthy appearance, and was a well-preserved man of his age. If he had been feeble I should have remarked it, and should have examined as to its cause thus showing that the doctor did more than take his mere answers, and was satisfied to answer as he did. This statement must *351 be referred to the general condition of the specified organs, not to occasional and temporary derangements of the system, which are common to all. The very next question is in a form which, if addressed by the doctor to Warner in regard to the point under consideration, would have elicited a history of any and all difficulties of the organs in question, showing that question 10 was only intended to call for general information from the doctor by the company, and not the past and present history of the functions referred to. But it appears, as a matter of fact, that the doctor was told Warner had had colic, at this interview.
It is difficult to see how the physician could have been misled in his opinion by the answers made to- him by Warner, or the company in any way deceived. Again: was the August illness serious ? Certain facts are not disputed. The statement was made by Warner that he never had any ‘ serious illness” (except that of a fever, seven years before); that he was ill in August, 1866 ; made the statement in September following, and died February 16, 1867. But where there is such abundant medical testimony to sustain the interpretation given by the referee to the character of the August illness, taken in connection with the reasoning which must occur to the common mind for not regarding such an illness serious, we should be hardly justified in disturbing the judgment, upon the ground that it was misrepresented. As a question of fact, the finding of the referee must be regarded as conclusive. It is true there is evidence on the part of the defendants of a character which, taken alone and unanswered, would be entirely controlling against this view of the case; but the decision of the referee, like the verdict of a jury, should not be disturbed when founded upon conflicting evidence. There must be an end of litigation, and questions of fact can only be settled by adhering to this rule.
As to his answer in regard to the character of the August illness, it was the mere expression of an opinion, and was neither a warranty nor a misrepresentation. The sickness was recent, and therefore remembered, but if he *352 did not consider it serious, it in Ms opinion did not call for an affirmative answer. Many persons do not call an illness serious which does not utterly prostrate them for the time being; if they are able to be about their house, are up from their bed every day and dressed: more especially is it so with those whose business is in-doors.
This may have been, and doubtless was, the opinion of Warner. .In this opinion he is confirmed by his family physician, and several physicians who have testified upon' the trial. We must therefore hold that Warner fully answered all the questions put to him, and having done so ^he wag not bound to go any further (27 N. Y., 295).
We think the cause has been well tried, and the judgment should be affirmed, with costs.
Judgment affirmed.