BARTEAU, Executor, v. PHŒNIX MUTUAL LIFE INSURANCE COMPANY, appellant.

*Life insurance — false statements by insured.    New trial — newly-discovered evidence.*

The application for a policy of life insurance declared that any untrue or fraudulent answers or suppressions of fact should render the policy void. To the question whether the applicant ever had paralysis, the answer was " No." In an action on the policy it appeared that the insured had had, previous to the application, two attacks of a disease which his physician had pronounced to be paralysis. He manifested alarm and apprehension at these attacks and died from a third attack in less than a year after the policy was issued. *Held,* that the policy was void.

The inquiries put to the applicant for life insurance are deemed to relate to matters which affect the general health and the continuance of life and not to temporary and occasional physical disturbances, the result of accidental causes to which all men are more or less subject. But in regard to a disease of well-marked symptoms, alarming in character, which all well-informed persons regard as affecting the general health and as threatening the continuance of life from the dangers of its recurrence, the applicant is bound to state the exact truth.

A new trial will not be granted on the ground of newly-discovered evidence where such evidence is wholly cumulative, and where the same diligence would have discovered the evidence before as well as after the trial.

APPEAL from an order denying a new trial on the minutes of the court, and from a judgment in favor of the plaintiff on the verdict of the jury ; also an appeal from an order of the special term denying a motion for a new trial on the ground of newly-discovered evidence. The action was brought upon a policy of insurance issued by the defendants upon the life of Joseph E. Althouse, the plaintiff's testator. The policy was for $2,000, and bore date July 29, 1867. Althouse died June 14, 1868. The defense was an alleged breach of warranty and fraud in the statement made by the testator, in the application for insurance, that he never had paralysis, of which disease he ultimately died.

The facts proved on the trial and proper to be considered on the appeals are stated or referred to in the opinion.

*H. W. McClellan* and *Martin H. Dorr*, for appellant.

*John Cadman* and *R. E. Andrews*, for respondent.

BOCKES, J. In the application for assurance, signed by Althouse, and which formed the basis of action by the company in issuing the policy, it was declared that his answer to the questions thereby propounded to him were fair and true, and that any untrue or fraudulent answers or suppressions of fact should render the policy null and void.

Among the questions there put to him was this : Whether he ever had paralysis. He answered : " No." This question was one of undoubted importance. It called for information as to a disease subtle in character, and the more alarming and hazardous from the probability and danger of its recurrence. The company were entitled to a truthful answer. Was it true then as the applicant

stated and represented, that he never had paralysis. This statement should be interpreted with fairness to the assured. If in fact he never had more than a temporary illness or ailment, merely indicating the disease in some of its symptoms, but of no pronounced type, his answer should be received and construed with reference to that state of facts. So it is a fair rule of interpretation, that the inquiries put to the applicant for life assurance are deemed to relate " to matters which affect the general health and the continuance of life," and not to " temporary and occasional physical disturbances the result of accidental causes, to which all men are more or less subject." These are not supposed to be in the mind of the parties. On the other hand, when the party is interrogated in regard to a disease of well-marked symptoms, alarming in character, which all well-informed persons regard as affecting the general health and as threatening the continuance of life from the danger of its recurrence, he is bound to speak and to state the exact truth. Tested by these, as it seems to me, just principles and requirements, how stands the case now before us for examination ? Was the statement of the plaintiff's testator considered with reference to his prior condition of health, and the obvious import of his words, truthful ? Had he never had paralysis — distinctly, unmistakably, confessedly — the knowledge of which caused to him serious alarm and apprehension ? The proof is quite unequivocal and conclusive, as it appears to me, on this subject. There were two attacks prior to the last, which terminated fatally — the first in August, 1865, the second in March, 1866, the last in June, 1868 — about ten months and a half after the issuing of the policy. That he had paralysis in 1865 and in 1866 is proved by many witnesses. His physician who attended him on those occasions so testified, and gave the diagnosis of his case. He stated that one-half of his body was affected; that the muscles of his face, arm and leg were involved ; that his power of locomotion was impaired ; that his features were distorted; that he could not articulate. The doctor was corroborated in the main by several other witnesses, his neighbors, who saw him and conversed with him frequently. One of these witnesses testified that on one occasion when he saw him, he attempted to speak and could not except with difficulty — that he had not the use of his tongue and mouth — that he drooled — that there was a difficulty in his walk. Another testified that his locomotion was impaired, as was also his articulation.

Other witnesses, several of them, testified to similar symptoms and indications of the disease. That he was afflicted with this disease was a matter of notoriety in the neighborhood.

Besides, on repeated occasions he stated that he had paralysis, said he had had two attacks, and expressed apprehension that the third would be fatal, as it was, in fact. He stated to the physician who attended him in his last illness that he had previously an affection of the same kind. It appeared also that a few months before he procured the policy in suit, and when he had the subject of obtaining an insurance on his life under consideration, he was told, in substance, that he could not get a policy on an application giving information of his having had paralysis. Now, all this evidence stands without any substantial contradiction or explanation. Some proof was given on the part of the plaintiff, which tended to weaken it, perhaps to some inconsiderable extent; but, in the main, its force is unshaken, and the necessary conclusion is, that the assured had two serious and alarming attacks of paralysis prior to the presentation of his application for this policy. Yet to the interrogatory, had he ever paralysis, he replied, "No." He was fully aware that the disease had been upon him, and was conscious of the great danger to be apprehended from it. He well knew that it was more than a mere "temporary illness," more than a mere "physical disturbance," or "slight difficulty," of which, in all human probability, he had wholly recovered, and in regard to which, or to its recurrence, he need entertain no fears. Both attacks were, in point of fact, of a seriously alarming character, and were evidently so considered by his physician, by his neighbors, and by himself. His statement in the application was manifestly untrue. The inquiry called for an answer of undoubted materiality and importance, and the party should be held to the consequences of a false answer. Therefore, by express stipulation, the policy issued upon the application which contained this false statement was void. *Fitch* v. *Am. Pop. Life Ins. Co.*, 2 N. Y. Sup. 247.

In considering this case, due regard has been had (in so far as they here have application) to the rules laid down for our guidance in giving construction and effect to the statements of assured persons in their applications for policies, and to the observations of the learned judges in the cases to which our attention has been called, and particularly to the examination of the subject, in *Higbie* v. *Guard. Mut. Life Ins. Co.*, 53 N. Y. 603; also in *Peacock* v. *N.*

*Y. Life Ins. Co.*, 20 id. 293; *Horn* v. *Amicable Life Ins. Co.*, 64 Barb. 81; *Holle* v. *Guard. Life Ins. Co.*, 6 Robt. 568; *Campbell* v. *N. Eng. Mut. Life Ins.* Co., 98 Mass. 381. Bliss on Life Ins., §§ 105, 107, 117. If the conclusion above arrived at be sound, the learned judge should have directed a verdict for the defendant as requested; or if the case was allowed to go to the jury, their verdict in favor of the plaintiff should have been set aside on the minutes of the court.

The order denying a new trial on the minutes of the court, and the judgment on the verdict should be reversed, and a new trial should be granted, with costs to abide the event.

This disposition of the case renders the appeal from the order denying a new trial, on the ground of newly-discovered evidence, of little importance; I am of the opinion, however, that the motion based on that ground was properly denied. The newly-discovered evidence, set forth in the moving papers, was wholly cumulative, besides, for aught that appears, it might have been discovered with due diligence, and been produced on the trial, had proper efforts been made. As is well said by counsel, the same diligence would have discovered the evidence before as well as after the trial. The order denying a new trial, on the grounds of newly-discovered evidence, should be affirmed, with $10 costs.

*Judgment accordingly.*