Price v. Phœnix Mutual Life Insurance Company.

---

DUNBAR PRICE and LIZZIE D. PRICE, by their guardian *ad litem,* ELON DUNBAR.

*vs.*

PHŒNIX MUTUAL LIFE INSURANCE COMPANY.

This is an action upon a life insurance policy upon the life of Richard Price. By the terms of the policy defendant promises to pay the sum assured to Anna D. Price, (the wife of said Richard,) upon whose application and for whose benefit in the first instance the policy was issued.   The policy further

provides as follows : " In case of the death of the said Anna D. Price before the decease of the said Richard Price, the amount of the said insurance shall be payable to their children, for their use, or to their guardian, if under age, within ninety days after due notice and proof of the death of said assured." Anna D. Price having died before her said husband, *Held*, that this action is well brought by the guardian *ad litem* of the children, being under age, and that it was not necessary to bring the same in the name of a general guardian.

The consideration for the policy is therein expressed to be the representations made to defendant in the application for the policy, and the premium paid and to be paid. The policy contains the following provision : "Provided always, and it is hereby declared to be the true intent and meaning of this policy, and the same is accepted by the assured upon these express conditions, that   *   *   *   *   if any of the declarations or statements made in the application for this policy, upon the faith of which this policy is issued, shall be found in any respect untrue, then, and in every such case, the policy shall be null and void." The application, which was made by Richard Price as agent for said Anna, consists of certain questions addressed to said Richard Price, and his answers thereto, and contains a stipulation following such questions and answers, and in these words, viz. : " It is hereby declared, that the above are fair and true answers to the foregoing questions, and it is acknowledged and agreed by the undersigned, that this application shall form the basis of the contract for insurance, and that any untrue or fraudulent answers, any suppression of facts, or neglect to pay the premium on or before the day it becomes due, shall and will render the policy null and void, and forfeit all payments made thereon." *Held*, that the answers to the questions in the application are representations, and not warranties, and that, therefore, their untruth (if they are untrue) is matter of defence to be pleaded and proved by defendant. *Held*, further, that such representations are by the terms of the policy made conclusively material, and that, therefore, their materiality cannot be questioned.

Both parties in this case having offered or introduced all the testimony desired by either, and the case having been rested on both sides without any motion to dismiss, the court was requested by defendant to give to the jury the following instruction, among others, viz. : " That the plaintiffs are not entitled to recover in this action, but the verdict must be for the defendant." *Held*, that the court might well decline to pass upon the evidence at this stage of the proceedings, and that its refusal to give the instruction under such circumstances would not be error.

The evidence in the case, in part, examined with reference to the point made by defendant that it does not justify the verdict.

The expression, "family physician of the party," as used in one of the interrogatories found in the application, defined to mean in this case, "the physician who usually attends and is consulted by the members of a family in the capacity of physician."

Appeal by defendant from an order of the district court for Hennepin county denying a motion for a new trial. The case is fully stated in the opinion.

BIGELOW & CLARK, for Appellant.

CORNELL & BRADLEY, for Respondents.

*By the Court.*—BERRY, J.—This is an action upon a life insurance policy upon the life of Richard Price.

By the terms of the policy the defendant promises to pay the sum assured to Anna D. Price, (the wife of said Richard,) upon whose application and for whose benefit in the first instance the policy was issued.

The policy further provides as follows: "In case of the death of said Anna D. Price before the decease of the said Richard Price, the amount of the said insurance shall be payable to their children, for their use, or to their guardian, if under age, within ninety days after due notice and proof of the death of said assured as aforesaid."

Anna D. Price having died before her husband Richard Price, the said Lizzie D. and Dunbar Price, being their minor children, bring this action by said Elon Dunbar duly appointed their guardian *ad litem* to prosecute the same. The defendant insists that the action should have been brought by the general guardian of said minors. But we are of a different opinion. Admitting that the guardian named in the policy is the general guardian, we think that while the words "payable  *  *  to their guardian  *  *  *  within ninety days," &c., give the

defendant the privilege and make it its duty to pay the sum assured to such guardian, (if the children are under age,) within ninety days, it does not follow that an action brought to recover the sum assured must be brought in the name of such general guardian. The children are the real parties in interest, and therefore the action is under the statute, (ch. 66, Gen. St., § § 26, 30,) well brought by them in their own names, they *appearing* by a guardian *ad litem*. Even if the general guardian be regarded as a trustee of an express trust, the statute authorizing such trustees to bring actions in their own names, is not imperative, but permissive in its terms. *Ch. 66, Gen. St.* § 28.

This action was brought in the Hennepin county district court November 9th, 1869. The complaint, among other things, alleges that on the 10th day of June, 1867, Anna D. Price, who was then the wife of Richard Price, entered into a contract of insurance with the defendant upon her said husband's life. The complaint sets forth the policy in full. The consideration for the policy is expressed in it to be the representations made to defendant in the application for the policy, and the premium paid and to be paid. The policy contains the following provision: " Provided always, and it is hereby declared to be the true intent and meaning of this policy, and the same is accepted by the assured upon these express conditions, that * * * in case he shall die by the hand of justice, or in consequence of a duel, or of the violation of any law of these states or of the United States, or of any other country which he may be permitted under this policy to visit or reside in, or if any of the declarations or statements made in the application for this policy, upon the faith of which this policy is issued, shall be found in any respect untrue, then, and in every such case, this policy shall be null and void." The complaint further alleges the death of said Anna, September 28th, 1867, and the

death of said Richard, March 2d, 1869; and "that up to March 2d, 1869, all the terms, agreements and stipulations, of said policy of life insurance, that were to be performed on the part of said assured, had been fully and faithfully performed, and complied with;" that proper notices and proofs have been duly made, but the defendant has failed to pay any part of the sum assured. The complaint does not set out the application referred to in the policy, nor state what the "declarations or statements" made in the application and referred to in the policy were.

Defendant's answer admits the making of a contract of insurance with Anna D. Price, and that the policy set out in the complaint contains a part of said contract, but denies that the policy contains the whole contract, and alleges that the application referred to in the policy is part of said contract of insurance.

The answer sets out the application dated June 3d, 1867, which was made by the said Richard Price as agent for said Anna, and consists of certain questions addressed to said Richard, and his answers thereto. Said application contains a stipulation following the questions and answers, and in these words, namely: "It is hereby declared, that the above are fair and true answers to the foregoing questions, and it is acknowledged and agreed by the undersigned, that this application shall form the basis of the contract for insurance, and that any untrue or fraudulent answers, any suppression of facts, or neglect to pay the premium on or before the day it becomes due, shall and will render the policy null and void, and forfeit all payment made thereon."

The answer denies that up to the 2d day of March, 1869, all the terms, agreements and stipulations of the policy that were to be performed on the part of the assured, have been fully and faithfully performed and complied with, and charges that

the answers to the following questions in the application were untrue, viz.:

" 7. What is the present state of the party's health? Answer—good.

" 9. Is the party addicted to the habitual use of spirituous liquors or opium? Answer—no.

" 13. Has the party ever had any of the following diseases, (naming them and among others,) gout, rheumatism? Answer—never.

" 18. Has the party had, during the last seven years, any severe sickness or disease? If so, state the particulars, and the name of the attending physician, or who was consulted and prescribed. Answer—no.

" 25. Name and residence of the family physician of the party, or of one whom the party has usually employed or consulted? Answer—have none."

The answer further charges: that at the time of the making of the application, and the issuing of the policy, said Richard's health was not good, but that he was in bad health and diseased; that he was addicted to the habitual use of spirituous liquors; that before said times he had had gout and rheumatism; that he had had within seven years before said times dyspepsia and chronic gastritis, and that at said times he had a family physician.

Upon the trial before the court and a jury, plaintiffs introduced evidence of the due appointment of the guardian *ad litem*, and of the making and delivering to defendant of the proof of death, with other notices and certificates required, and also proved by the witness Andrew Scott, who was boarding in Richard Price's family from September, 1865, to the summer of 1867, that in the summer of 1867, his (Richard Price's) health was good as far as the witness knew. They also proved by Dr. Murphy, one of the defendant's medical

examiners, that he knew Richard Price in his life time for three or four years; that he made a particular examination of him at the time of his application, and considered him a healthy, sound man at the time, and passed him as a suitab'e subject for insurance; that he examined him and found no disorder about him    Plaintiffs also proved by Dr. C. G. Goodrich that Price died of typhoid fever, and after offering some other evidence, not here material, rested their case.    Defendant thereupon moved to dismiss the action, upon the ground that the complaint does not state, nor the evidence establish, a cause of action.

It is here argued that the court below erred in refusing to grant the motion, because the statements contained in the application are warranties, and therefore conditions precedent to plaintiffs' right of recovery which it is necessary for them to aver and prove.

The plaintiffs claim, on the other hand, that these statements are representations.    The point thus presented for our consideration is one of prime importance in this case, not only with reference to the question of pleading and burden of proof, but with reference to the further inquiry whether it is essential to plaintiffs' recovery that the statements mentioned shall be *strictly* true, or whether their *substantial* truth is sufficient.

So far as the questions presented by the case at bar are concerned, it is sufficient to define a *warranty* in insurance to be a *part of the contract* evidenced by the policy, and a binding agreement that the facts stated are strictly true.    1 *Phillips on Insurance, 5th Ed.* § § 754, 756; *Flanders on Insurance,* 204–5.

A *representation* in insurance may, for the purposes of this case, be defined to be a statement in regard to a *material* fact made by the applicant for insurance, to the insurer, with ref-

erence to a proposed contract of insurance. 1 *Phillips on Insurance,* § 524, *et. seq.*

As representations simply, they are not a part of the contract of insurance. *Flanders on Insurance,* 201, and *cases cited* ; *Campbell vs. N. E. M. L. I. Co.,* 98 *Mass.* 381. And though expressly referred to in the policy so as to become a part of the written contract, they may not become warranties. 1 *Phillips on Insurance,* § § 871, 893. And even if it be made by the very terms of the policy, as in the case at bar, an express condition of the contract of insurance that if such representations are found to be untrue, the policy shall be null and void, they do not necessarily lose their character as representations, and become warranties, though the effect of such express condition may be to make them conclusively material. *Campbell vs. N. E. M. L. Ins. Co., supra.*

It is sufficient if representations be *substantially* true, while a warranty must be *strictly* complied with. 1 *Phillips on Ins.* § § 544, 669, 762, *et seq.; Daniels vs. Hudson R. F. I. Co.,* 12 *Cush.* 423 ; *Chaffee vs. Cattaraugus Co. M. F. I. Co.,* 18 *N. Y.* 376. A false warranty, therefore, avoids a policy, while a false representation (not fraudulent) does not avoid a policy unless it relates to something which is material in fact, or is made material by the contract of the parties. 1 *Phillips on Ins.,* § 524 *et seq.; Flanders on Ins.,* 202, 298, 326 ; *Witherell vs. Mass. Ins. Co.,* 49 *Me.* 200; *Campbell vs. N. E. M. L. Ins. C supra.*

Warranties are, then, conditions precedent, so that their truth must be pleaded by the assured, upon whom of course the burden of proving the same rests; whereas the falsity of representations is matter of defence to be pleaded and proved by the insurer. *Wilson vs. Hampden Ins. Co.,* 4 *R. I.* 159; *Campbell vs. N. E. M. L. Ins. Co., supra ; McLoon vs. Conn. Mu. Ins.,* 100 *Mass.* 474; *Herron vs. Peoria M and F. I. Co.,* 28 *Ill.*

Price v. Phœnix Mutual Life Insurance Company.

238 ; *Mu. Ben. Ins. Co. vs. Robertson*, 54 *Ill.; Leete vs. The Gresham L. I. Co.*, 7 *Eng. Law and Equity* 578.

We have brought together the foregoing principles of the law of insurance, not because they all have a direct application to this case, but rather with the view of bringing to mind and placing side by side the respective consequences which flow from treating statements of the kind under consideration as warranties, or as representations. And when it is considered that a *strict*, or, as many of the authorities hold, a *literal* compliance with the terms of a warranty is required, it is not difficult to appreciate the force of what is said by Chief Justice Shaw in Daniels vs. Hudson River F. I. Co., 12 Cushing 424, "the leaning of all courts is, to hold such a stipulation to be a representation, rather than a warranty, in all cases, where there is any room for construction; because such construction will, in general, best carry into effect the real intent and purpose which the parties have in view, in making their contract." And see *Campbell vs. N. E. M. L. I. Co., supra, and authorities cited.* This intent and purpose is, as we understand it, to enter into a contract of insurance against the real substantial risk in the given case. And see Flanders on Ins., 224. Hence it is said, too, that "if it be doubtful whether certain statements made by the applicant relative to the subject of insurance are to be regarded as warranties, or as representations, they will be treated as the latter." *Wilson vs. Conway F. I. Co.*, 4 *R. I.* 143.

And we think it is well and truly remarked in 1 Phillips on Ins., § 638, in speaking of the difficulty of determining, in many cases, whether certain phraseology makes a warranty or a representation, that : " The cases would have presented fewer difficulties of construction if the early jurisprudence had been less open to the admission of forfeitures of the policy, and more easily satisfied with a compliance with writ-

ten stipulations substantially equivalent to a literal one, where
such a construction was not inconsistent with the express pro-
visions of the contract. The recent jurisprudence tends to
greater liberality of construction in favor of maintaining the
contract. Such a rule may as well be applied to stipulations
and recitals in the policy, as to representations preliminary and
collateral to it; and it is more equitable, after the policy has
once gone into effect, and the underwriter has a right to re-
tain the premium, that the contract should be continued in
force as long as its being maintained is consistent with its ex-
press provisions, and the underwriter is not thereby preju-
diced." These remarks apply, as it seems to us, with pecu-
liar force in this state, where equity, which abhors forfeitures,
is blended with law in the administration of justice.

We come now to the application of what has been said to
the purpose of determining whether the statements referred to
in the policy in this instance are to be regarded as warranties
or representations; and upon this branch of the case we can-
not do better, even at the risk of some repetition, than to
quote what is said in the comparatively recent case of Camp-
bell vs. New England Mutual Life Insurance Co., 98 Mass. 381.

It is there said : " When statements or engagements on the
part of the insured are inserted, or referred to in the policy
itself, it often becomes difficult to determine to which class
they belong. If they appear on the face of the policy, they
do not necessarily become warranties. Their character will
depend upon the form of expression used, the apparent pur-
pose of the insertion, and sometimes upon the connection, or
relation to other parts of the instrument. If they are con-
tained in a separate paper, referred to in such a manner as to
make it a part of the contract, the same considerations of
course will apply. But if the reference appears to be for a
special purpose, and not with a view to import the separate

Price v. Phœnix Mutual Life Insurance Company.

paper into the policy as a part of the contract, the statements it contains will not thereby be changed from representations into warranties.    *    *    *    In considering the question whether a statement forming a part of the contract is a warranty, it must be borne in mind, as an established maxim, that warranties are not to be created nor extended by construction. They must arise, if at all, from the fair interpretation and clear intendment of the words used by the parties. (Authorities cited.) When, therefore, from the designation of such statements as ' statements' or as ' representations,' or from the form in which they are expressed, there appears to be no intention to give them the force and effect of warranties, they will not be so construed. (Authorities cited.)

"The application is, in itself, collateral merely to the contract of insurance. Its statements, whether of facts or agreements, belong to the class of representations. They are to be so construed, unless converted into warranties by force of a reference to them in the policy, and a clear purpose, manifest in the papers thus connected, that the whole shall form one entire contract." These remarks are made in a case in which the policy was by its express terms made payable "upon the following conditions," (among others,) that "if the statements made by or on behalf of or with the knowledge of the said assured to said company as the basis of or in the negotiations for this contract shall be found in an^ ^es^ect untrue " then the policy should be null and void.

In the application in the case cited, ὑne applican⌐ proposes to insure" his life with the defendant, "and with that view, and as the basis of such insurance," makes the statements contained therein. It also appeared that in answer to the questions: "Have you carefully read the above questions and the answers thereto?" and: "Are you aware that any fraudulent or untrue answers, or any concealment of fact, or non-compli-

ance with the terms and conditions of the policy, will vitiate the insurance?" The applicant answered, "Yes."

The application concluded as follows: "The foregoing are full, fair and true answers to the questions proposed," and was signed by the applicant. The principal defence was that certain statements contained in the application were untrue, and that by reason thereof the policy was null and void.

The court after attempting (not however as it seems to us with complete success,) to distinguish the case under consideration from Miles vs. Connecticut Insurance Co., 3 Gray 580, in substantial respects, proceeds as follows: "The defendant however contends that, a written application having been made in this case, which by its own terms declares the statements therein contained to be made 'as the basis of' the insurance applied for, the policy will attach to that application as containing the 'statements' referred to, and thus constitute an express warranty * * . But even if the application may properly be resorted to for aid in the construction, it contains no agreement and no words to indicate that its statements are to be taken as warranties; nor that they are to form part of the contract. The designation of 'statements,' both in the application and in the policy, comports with the idea of representations rather than of warranties. Representations are 'the basis of' the contract of insurance; and such these 'statements' are declared to be. The effect which is to result from their untruth results also from the untruth of representations. It is true that misrepresentations defeat a policy without any provision to that effect in the policy itself. But the insertion of such a provision does not therefore require a construction which shall give them a different force or character. * * * . The clause in the policy is in the form of a condition, and is grouped with other provisions of various character and purpose under the general head of 'conditions.' But the use

of the term 'conditions' does not always carry the legal consequences which attach to that word in its technical meaning. The clause must be taken as a part of the contract, and must have such an application as its fair interpretation, with the other parts of the contract, requires; but neither the form, nor the subject-matter, nor its associate provisions under the head of 'conditions,' indicate that it was intended to give to this clause the technical character of a warranty, or a condition precedent, * * * . By statements 'in any respect untrue' must be intended statements made and received as inducement to the contract; that is, material and proper to be disclosed to the insurers to enable them to estimate the risk proposed, and determine upon the propriety of entering into the contract."

It was held in the case cited, that the statements made in the application were not warranties, but representations only; that the burden of proving them to be untrue was upon the insurers; that they need not be complied with literally, but must be substantially; that where the question of the materiality of the representations depends upon circumstances, and not upon the construction of any writing, the question is one of fact to be determined by the jury; but that where the representations are in writing, their interpretation belongs to the court, " and the parties may by the frame and contents of the papers, either by putting representations as to the quality, history or relations of the subject insured into the form of answers to specific questions, or by the mode of referring to them in the policy, settle for themselves that they shall be deemed material; and when they have done so, the applicant for insurance cannot afterwards be permitted to show that a fact which the parties have thus declared material to be truly stated to the insurers, was in fact immaterial, and thereby escape from the consequences of making a false answer to such

a question." The court after citing numerous authorities in support of these positions, and among others, Anderson vs. Fitzgerald, 4 H. L. Cases 484, (24 Eng. Law and Eq. 1,) held that in the case before it, upon the facts before stated in reference to the language of the policy and application, and to the answers made to specific questions put in the application, the parties had by their contract made the representations (designated as statements in the policy,) material to be disclosed; and that the only question for the jury upon this branch of the case was whether the representations were substantially untrue. The sum and substance of all this would seem to be, that the effect of the condition is to require that the statements shall be true as *material representations*, not as *warranties;* or, in other words, that they must be materially and substantially true, and need not be strictly or literally true. We barely suggest that perhaps the very fact that the word true as applied to insurance is thus ambiguous, would lead to the same conclusion when taken in connection with the familiar rule by which an instrument is construed most strongly against its maker, which in the case of the present policy is the defendant. See also *Miller vs. Mut. Ben. L. I. Co.*, (Iowa Sup. Ct., 1871;) *Mut. Ben. L. I. Co. vs. Wise*, Md. Court of Appeals, 1871. We have drawn at length upon the case of Campbell vs. N. E. M. L. Ins. Co., because it seems to us to square in all material particulars with the case at bar, so far as the questions now being considered are concerned.

In the policy and application in the case at bar, it is nowhere said, in terms, that the application does or shall form part of the policy, though this fact does not seem to us to possess an importance so decisive as is attributed to it in some of the adjudged cases.

The application in this case is headed: "Questions to be answered by the person whose life is proposed to be insured,

and which *form the basis* of the contract." The concluding question and answer in the application are these: "Is the party and the applicant aware that any untrue or fraudulent answers to the above queries, or any suppression of facts in regard to the health, habits, or circumstances of the party to be assured, will vitiate the policy, and forfeit all payments thereon? Fully." The application then proceeds as follows: "It is hereby declared, that the above are fair and true answers to the foregoing questions, and it is acknowledged and agreed by the undersigned, that this application shall *form the basis* of the contract for insurance, and that any untrue or fraudulent answers, and suppression of facts, or neglect to pay the premium on or before the day it becomes due, shall and will render the policy null and void, and forfeit all payments thereon."

The application is signed as before stated, and contains no further or other statements important to be here referred to.

The policy purports by its terms to be made by the company, " in consideration *of the representations* made to them in the application for this policy," and of the premiums paid and to be paid. The proviso contained therein is as follows: " Provided always, and it is hereby declared to be the true intent and meaning of this policy, and the same is accepted by the assured upon these express conditions, that   *   *   *   if any of *the declarations or statements* made in the application for this policy, upon the faith of which this policy is issued, shall be found in any respect untrue, then, and in every such case, the policy shall be null and void;" and the policy contains nothing further of importance here.

Now upon comparing the application and policy in this case, (portions of the above extracts from which we have italicised for convenience) with the application and policy in Campbell vs. N. E. M. L. Ins. Co., we are unable to perceive

that they differ in any respect material to the question under consideration.  It seems to us so clear that a careful comparison of the language used in the two cases will lead to this result, that we deem it superfluous to attempt to establish it by argument.  We will, therefore, content ourselves with calling attention to a single point of verbal difference.  In the case cited, the condition is that " if the statements made   *   *   * as the basis of or in the negotiations for this contract shall be found in any respect untrue," &c.  In the case at bar, the condition is " if any of the declarations or statements made in the application for this policy, upon the faith of which this policy is issued, shall be found in any respect untrue," &c.  With the here unimportant difference that in the first case the statements referred to are not confined to those made in the written application, it seems to us that the " conditions " are substantially identical.  The words, " as the basis of   *   *   the contract," and the words, " upon the faith of which this policy is issued," taken in the connection in which the same are used, appear to convey the same idea.

If the statements were the *basis* of the contract, the policy was issued upon the faith of them, and *vice versa*.  The words, " in the negotiation," &c., do not of course affect our present comparison.  But independent of the authority of the case from which we have so largely quoted, we may well pause to inquire why if it was the intention to make the statements contained in the policy warranties, that intention was not distinctly expressed ?  All doubt could have been removed by a few words, by far less words than are now used in the policy in reference to this matter.  Why, then, were they not called *warranties*, rather than " representations," " declarations," " statements," unless the understanding was that they were the latter and not the former ?  Our conclusion, then, upon this branch of the case is, that the statements referred to in

the policy are not warranties, but representations, and that, therefore, their untruth is matter of defence to be pleaded and proved by the defendant. It follows that defendant's motion to dismiss the action, because plaintiffs had failed to plead or prove a cause of action, was properly denied.

We are well aware that it would be difficult, if not impossible, to reconcile the views expressed in the case cited from 93 Mass., which we follow in the main, with the doctrines laid down in a great number of other cases.

We have examined all the authorities cited by defendant, and very many more. Some of them, as perhaps Cazenove v.s. British Pro. Co., 95 E. C. L. 437, together with Anderson v.s. Fitzgerald *supra* (which it follows) would not, if their authority was confined to the facts presented, conflict with the case from 98 Mass.; while others are either quite irreconcilable with it, or if they could be reconciled, it is only by what appear to us to be distinctions without difference.

We can conceive of no useful purpose which would be subserved by a detailed examination of the multitude of cases bearing upon this subject. Suffice it to say that the views to which we have arrived are the result of pains-taking examination, and are such as commend themselves to our best judgment. This disposes of the defendant's first assignment of error.

The motion to dismiss having been denied, the trial proceeded, and defendant having rested the case upon its part, plaintiffs introduced evidence in rebuttal. Defendant contends that the court below erred, secondly, in the admission of evidence under the following circumstances. The 13th question and answer in the application were: "Has the party ever had any of the following diseases, (naming several, and among others,) rheumatism? Answer—never." Testimony having been introduced going to show that prior to the appli-

cation the life insured had sub-acute rheumatism, one of plaintiffs' witnesses (a physician) was asked: "Has sub-acute rheumatism any effect to shorten life?" The question, with another of a similar character, was permitted to be answered, against defendant's objection. The only object of this evidence (so far as we can judge) must have been to show that sub-acute rheumatism did not shorten life, as a basis for inferring that it did not enhance the risk, and was, therefore, not material to be disclosed to the insurer. If sub-acute rheumatism was the disease of rheumatism within the meaning of the 13th question, the evidence was entirely inadmissible, since, as we have already seen, it had been conclusively settled by the contract of the parties that the answer to the 13th question was a material representation. (*Geach vs. Ingall,* 14 *Mees. & Wels.* 95.) It necessarily follows that the question of materiality was not open, or, in other words, that the plaintiffs could not be permitted to show that the representation was *not* material. If on the other hand sub-acute rheumatism was not the disease of rheumatism within the meaning of the question, (as to which neither the witnesses nor the counsel agree) it might, perhaps, be claimed that the testimony as objected to was unimportant, and worked no harm to defendant. But if the case turned (as it may have done) upon the representations contained in the answer to the 13th question, it is impossible for us to say whether the jury found for the plaintiffs upon the ground that sub-acute rheumatism was not the disease of rheumatism within the intendment of the question, or upon the ground that if it was such disease they had the right to inquire whether the representation made in regard to it was material. We cannot say, then, that the evidence was not prejudicial to the defendant; its reception was therefore error.

This brings us to the points made by defendant in reference to the instructions requested and refused to be given, and the

charge given to the jury.   The court instructed the jury that
" upon the issues made by the pleadings, upon the falsity of the
statements and representations contained in the application in
question, the burden of proof was upon the defendant in
respect to the affirmative matter set up by the defendant in its
answer to defeat a recovery in this action."   For reasons be-
fore given it is apparent that defendant has no cause to com-
plain of this instruction.

The court also instructed the jury " with reference to the
issue made upon the 13th question, and the answer thereto
in said application, that if said Price, prior to the making of
said application, had any of the affections mentioned in said
question, but of so trifling a character as hardly to be classed
among diseases, and as not to be remembered at the time of
the application, it might not be a substantive disease so as to
have an influence upon the length of life of the party making
the application, or such as would be noticed by the medical
examiner as disease, and in that case the answer to said ques-
tion might not be a misrepresentation under a fair and reason-
able construction; that this was, however, a question for
the jury to determine upon the evidence in connection with
the medical testimony, and that the jury were the exclusive
judges of the facts."

. It must be confessed that this instruction is not altogether
clear or satisfactory.

The representations contained in the answer to the 13th
question were, as we have already seen, made conclusively
material by the express contract of the parties.

If the life insured had not had the *diseases* mentioned in the
question, then no affection which he might have had, no mat-
ter how near akin to, or how closely resembling or approxi-
mating the diseases mentioned, would make his negative answer
to the question a material misrepresentation.

But if he had had any affection amounting to a *disease* of the kind mentioned, his negative answer would be a material misrepresentation, no matter how "trifling" the character of the affection, nor whether it was remembered at the time of the application, nor whether it would have any influence on the length of his life, nor whether it would be noticed by the medical examiner; and if there was an affection amounting to such disease, the question of the materiality of the negative representation would not be open to the jury, as the instruction would appear to indicate. *Geach vs. Ingall, supra.* We are, therefore, of opinion that defendant's exception to this instruction was well taken.

Among other requests, defendant asked the court to instruct the jury "that the plaintiffs are not entitled to recover in this action, but the verdict must be for the defendant."

The instruction was refused. Defendant also insists, as was insisted upon the motion for a new trial below, that the verdict was not justified by the evidence. Defendant claims that the court below erred in refusing the instruction asked, and in denying the motion (based upon the ground just mentioned,) for a new trial; and as both alleged errors are predicated upon substantially the same considerations, we will examine them together.

First premising, however, with regard to the refusal of the instruction, that it was in effect a request that the court should take the place of the jury, and render a verdict upon the questions of fact involved in the issues. Now, of course, there are cases in which, there being no evidence to sustain the plaintiff's alleged cause of action, it is proper enough for the court to direct the jury in terms to find for the defendant. But it seems to us that it would hardly be error for the court to refuse to give such instruction, when the request is made under circumstances like those presented in this instance.

Price v. Phœnix Mutual Life Insurance Company.

Both parties in this case appear to have introduced or offered all the testimony desired by either, and the testimony having been closed, the case had been rested on both sides. The record shows that without the interposition of a motion to dismiss, the court was "thereupon" requested by the defendant to give ten instructions, of which that under consideration was the first. Under these circumstances we think the court might well decline to pass upon the effect of the testimony at this stage of the proceedings.

The jury being the judges of the facts, according to the charge subsequently given, and the testimony being all before them, and the case having (as it is to be presumed,) been argued to the jury, the court might, in the exercise of a sound discretion, very properly decline to consider at this time, and upon a sudden, the questions presented by the defendant's request, and to keep the jury and the other business of the court waiting meanwhile.

The jury were competent to pass upon these questions, and if the fact should be (as claimed in this case) that the verdict was not justified by the evidence, the defendant could easily take advantage of it (as it did) upon a motion for a new trial. Except, however, for the purpose of forestalling wrong influences, and with reference to a new trial, these remarks are not of any great practical importance in this case, since, as before suggested, the same questions upon the merits are presented by the refusal to give the instruction requested, and by the refusal to grant the new trial. The defendant insists that the court below erred in both refusals, because the uncontradicted and unimpeached evidence showed that the answers to the 13th, 18th and 25th questions in the application were untrue. The 13th question was: "Has the party ever had any of the following diseases, (naming several, and among others) rheumatism?" "Answer—never." There was evidence in

this case tending to show that the life insured had had sub-acute rheumatism. There was also evidence in the case tending to show that sub-acute rheumatism is not the *disease* of rheumatism, in the ordinary understanding of the term. There was also evidence tending to show that, technically, and in medical parlance, sub-acute rheumatism is the disease of rheumatism. Dr. Willey swears that it is generally overlooked as a disease, and there is other testimony to the same effect.

The rheumatism referred to in the question is the *disease* of rheumatism. Any rheumatic affection not amounting to the *disease* of rheumatism, is not comprehended in its terms, any more than the spitting of blood occasioned by a wound of the tongue, or the extracting of a tooth, is the *disease* of " spitting of blood " mentioned in the same question. The life insured had the right to answer the question upon the basis that its terms were used in their ordinary signification. If there was any ambiguity in the question so that its language was capable of being construed in an ordinary, as well as in a technical sense, the defendant can take no advantage from such ambiguity. *Wilson vs. Hampden F. I. Co.,* 4 *R. I.* 159 ; *Flanders on Insurance,* 225. As to this question, then, we cannot say that the verdict was not supported by the evidence.

The 18th question and answer were as follows: " Has the party had, during the last seven years, any severe sickness or disease ? Answer—no." The charge in the answer was that the life insured had had within seven years *chronic gastritis.* There was evidence tending to show that he had had gastritis. Unless chronic gastritis and gastritis are synonymous, as to which there is no judicial presumption nor testimony, the evidence was not within the issues, so that the false representation charged was not proved. In addition to this consideration, we are not free from doubt as to whether gastritis was shown to be " a severe sickness or disease." We can take no judicial

cognizance of its character. The evidence certainly has a strong tendency to show that it was the result of the excessive use of spirits, and that it was an affection of brief duration.

We cannot say that the jury might not upon the evidence find a warrant for regarding it as a temporary consequence of dissipation, rather than a "severe sickness or disease," in the ordinary meaning of those terms.

As to this question, then, we are unable to say that the evidence did not justify the verdict.

It remains to consider the 25th question and answer which are as follows, viz.: "Name and residence of the family physician of the party, or of one whom the party has usually employed or consulted? Answer—have none." This answer is, in our opinion, a positive denial that the life insured had a family physician.

The phrase "family physician" is in common use, and has not, so far as we are aware, any technical signification. As used in this instance, and for the purposes of th testimony appearing in this case, the chief justice and myself are of opinion that it may be sufficiently defined as signifying the physician who usually attends, and is consulted by the members of a family in the capacity of physician.

We employ the word "usually," both because we do not deem it necessary to constitute a person a family physician, (as the phrase is used in this instance,) that he should *invariably* attend, and be consulted by the members of a family in the capacity of a physician, and because we do not deem it necessary that he should attend, and be consulted as such physician by each and all of the members of a family. For instance, the testimony in this case shows that at the time when the application for insurance was made, the family of Richard Price consisted of himself, his wife, and two or three children. We think that a person who usually attended, and

was consulted by the wife and children of Richard Price as a physician, would be the family physician of Richard Price in the meaning of the above 25th interrogatory, although he did not usually attend on, and was not usually consulted as a physician by Richard Price himself.

We had intended to go farther, and express an opinion distinctly and directly upon the question whether the verdict so far as the matter of family physician is concerned is justified by the evidence, but as the case will go back for a new trial on other grounds, and as we desire to avoid all unnecessary interference with the action of a future jury, we shall rest content with having given our construction of the meaning of the expression, " family physician," as used in the interrogatory under consideration, and with the further remark that, as we have already determined, the answer to the interrogatory is made conclusively material by the policy, so that if false, its falsehood will bar any recovery upon the part of the plaintiffs in this action.

As to the other branch of the 25th interrogatory, viz.: that which asks for the name and residence of a physician whom the party has usually employed and consulted, we are all agreed that no proper issue is raised by the pleadings as to the truthfulness of the answer to the same, and we have, therefore, seen no occasion to inquire into its meaning, or whether, so far as it is concerned, the verdict is justified or not.

Order denying a new trial reversed and a new trial awarded.


McMillan, J.—The twenty-fifth interrogatory and answer in the application upon which this policy is based, are as follows, to-wit: "Name and residence of the family physician of the party, or of one whom the party has usually employed or consulted? Answer—have none."

Price v. Phœnix Mutual Life Insurance Company.

One ground of defence set up is that, at the time the application was made, and the policy executed, Richard Price, the deceased, had a family physician. No other issue is taken upon this interrogatory. It does not appear that the term family physician has any technical signification; it is, therefore, for the court to determine the meaning of the phrase "family physician of the party" as here used. The purpose of the interrogatory was to obtain the name and residence of the medical attendant best able to give an account of the physical condition, at the times referred to, of the person whose life was assured. (*Bliss on Life Ins.* 171.) This intention would be best effected by obtaining a reference to the physician who was the medical adviser of such person. The interrogatory, it seems to me, was made to embrace the two questions contained in it, and put in the alternative, in order that a true affirmative answer to either would elicit the address of the physician who had charge of the assured, as his medical adviser. In both questions the inquiry is for the physician of *the party;* yet if the phrase "family physician of the party" does not necessarily include the person assured, a true answer, in many cases, may be given to the first question embraced in the interrogatory without disclosing the name of the physician of the assured; for instance, the person whose life is assured may have one person as his individual physician, and a different person as the physician for all the rest of his family; yet if the construction given by my brethren to the phrase "family physician of the party" be correct, it seems to me he might, in answer to the inquiry for his family physician, truthfully give the name of the physician attending the other members of his family, and withhold the name of his personal physician, for according to this construction the terms of the question call for nothing more. It may be that such answer would not be a true answer to the entire interrogatory, but that is not

the question before us; the only point for us to determine is whether Price's answer is false in this, that he had a family physician at the time, and answered that he had none

I am unable, therefore, to concur with my brethren in the construction they give to the phrase "family physician of the party." I think the phrase, as used in this instance, means the physician who usually attends and is consulted by all or most of the members of the family of the person whose life is assured, and that the person thus assured, if he has medical attendance, must be one of the members attended by such physician.

Upon all the other points considered in the opinion, and in the conclusion arrived at in the case, I concur.