## Case No. 3,121.

### CONOVER v. MASSACHUSETTS MUT. LIFE INS. CO.

[3 Dill 217:[1] 4 Ins. Law J. 93; 1 Cent. Law J. 597; 4 Bigelow, Ins. Cas. 187.]

Circuit Court, W. D. Missouri. Nov. Term, 1874.

LIFE INSURANCE—WARRANTY—REPRESENTATIONS.

1. Where no specific and distinct reference was made in the policy to the written application, the statements in the latter, although it referred to the policy, and contained a warranty, were considered as representations, and not as warranties. The recent leading cases on this subject cited.

2. Where the policy itself contains a condition that if the statements made by the applicant in the negotiations for the policy shall prove untrue, the policy shall be void, untruthful answers, to material questions relating to the health and habits of the assured, will defeat the right to recover thereon, though the matters misrepresented did not cause or contribute to his death.

[Cited in White v. Insurance Co., Case No. 17,545.]

3. The act of the Missouri legislature of March 23, 1874, commented on and held not to apply to the case in judgment.

The defendant [John Conover], through an agency in Missouri, issued a policy for $5,000 upon the life of Eli Barnum, the plaintiff's intestate, dated June 10, 1871, and which stated that "this policy is made and accepted upon the following conditions: In case the statements made by, or on behalf of, or with the knowledge of, the said assured to the said company, as the basis of, or in the negotiations for, this contract, shall be found in any respect untrue, this policy shall be null and void."

The policy was issued upon an application therefor, dated May 27, 1871, signed by the applicant, and containing thirty-two special questions to be answered, and which were answered by him. The 7th question was, "Does the party use alcoholic stimulants?" Answer.—"No." 8th.—"If so, state how often? In what quantities?" Answer.— "None." 9th.—"Has the party at any former time used alcoholic stimulants?" Answer.— "No" 15th.—"Has the party ever had inflammatory rheumatism?" Answer.—"No." 17th.—"Has the party now, or has he ever had, an habitual cough?" Answer.—"No." In the application or declaration was the following: "And I do hereby agree that the answers given to the following questions,

1 [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

and the accompanying statement, and this declaration, shall be the basis and form part of the contract or policy between me and the company, and I warrant such answers and statements as true and correctly stated, and agree that if the same be not so in all respects, the said policy shall be void, and all moneys which may have been paid on account thereof, and all dividend credits, shall be forfeited to said company."

The last question was, "Is the party and the applicant aware that any untrue or fraudulent answers to the above queries * * * will vitiate the policy and forfeit all payments thereon, and has he carefully read the questions and answers thereto?" To which he answered in writing, subscribed by himself, "Yes."

The assured died within one year after the date of policy, and this is an action by his executor to recover the amount insured by the policy. The company defends the action on several grounds, but it is only necessary to state those on which the judgment of the court rests. The company pleads that the statements in the application as to the health and habits of the assured are untrue in these several particulars; viz.: at the time of signing the application, and for years previously he had habitually used alcoholic stimulants; that he had had inflammatory rheumatism, and for years labored under an habitual cough. He did not die of rheumatism or any pulmonary disease, nor, so far as appeared, in consequence of the use of alcoholic drinks.

The action was tried by the court, a jury having been waived. Without recounting the evidence of the various witnesses adduced by the parties, it is sufficient to state that the witnesses on both sides all concurred in the statement that the assured was habitually given to the use of alcoholic drinks; that he not unfrequently became intoxicated, though he would often, for weeks at a time, not drink at all. He was in the army, as a lieutenant of the fifty-seventh Illinois regiment, and it is clearly proved that he had a severe attack of inflammatory rheumatism in 1862, so severe that he had to leave his regiment and be taken to the hospital. It is also shown that he labored under an habitual cough while in the army. On the other hand, there is testimony to the effect, that at and about the time of his effecting the insurance in question, his general health was good.

After his death, and after this suit was brought and an answer was filed, the legislature of the state of Missouri passed an act, approved March 23, 1874, as follows:

"Sec. 1. No misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due

and payable; and whether it so contributed in any case, shall be a question for the jury.

"Sec. 2. In suits brought upon life policies heretofore or hereafter issued, no defense based upon misrepresentation in obtaining or securing the same, shall be valid, unless the defendant shall, at or before the trial, deposit in court for the benefit of the plaintiffs, the premiums hereafter received on such policies, with six per cent interest per annum from date of receipt."

Henry Flanagan, John Conover, and W. S. Everett, for plaintiff.

H. K. White, for defendant.

DILLON, Circuit Judge. Much of the discussion at the bar was directed to the point whether the statements in the application concerning the health and habits of the assured were, under the language of the policy in connection with the language of the application, to be considered as warranties as maintained by the defendant, or representations as maintained by the plaintiff. It was not seriously denied by counsel that these statements were not true in point of fact, and hence if they are warranties, it is plain the plaintiff has no case. The plaintiff's position was that the statements were not part of the policy by insertion therein, or by distinct and specific reference in the policy itself to the application as part of the policy, and hence these statements in the application could at most, only be representations; and being such, it was further claimed by the plaintiff that their untruthfulness, although relating to matters material to the company, on preliminary inquiries, were, in fact, as the event showed, immaterial, since the death was not caused by the diseases or habits to which the untruthful answers related.

Inasmuch as the policy itself does not distinctly identify and refer to the written application and make it part of the policy, I am inclined, in view of the established and reasonable rule, that warranties are not to be created or extended by construction, and the doctrine of the later and best considered cases, to hold, that the statements in the application are representations and not warranties. Campbell v. New England Ins. Co. (1867) 98 Mass. 381; followed in Price v. Phoenix Ins. Co. (1871) 17 Minn. 497 [Gil. 473]; May, Ins. §§ 164, 165.

As this is the view most favorable to the plaintiff, the case will be decided on the assumption that it is correct.

It will be seen by reference to the statement of the case, that the policy itself contains a condition that if any "statement made by the assured to the company, as the basis of, or in negotiation for, this contract shall be found in any respect untrue, this policy shall be null and void;" and in the application the statements therein contained, "shall," it is declared, "be the basis and form part of the contract or policy" to be entered into between the parties. In the application the applicant declared that he had carefully read the questions and his answers to them, and that he was aware that if any of the answers were untrue or fraudulent, it would vitiate the policy.

The representations upon which the company grounds its defense, relating as they do to the habits of the assured, in respect to the use of alcoholic stimulants, then and previously, and to whether he had ever been afflicted with inflammatory rheumatism (which it is well known often leads to fatal diseases of the heart), or had ever had an habitual cough (known to precede or indicate pulmonary diseases), were material, to enable the company or medical adviser to form an accurate opinion as to the risk which the insurer was asked to assume. Now the policy itself contains the express provision, that if the statements of the assured, in the negotiations for the policy, shall be found untrue, the policy shall be void. This is the contract the parties made, and it is binding upon them; and if the representation shall be found untrue, the policy shall be void. This is the contract the parties made, and it is binding upon them; and the case is governed by and falls precisely within Anderson v. Fitzgerald (1853) 4 H. L. Cas. 484, in which eleven of the judges of England attended the summons of the house of lords, and where the unanimous judgment was, in a case like the present, that it was erroneous to leave it to the jury to say whether certain answers were material as well as false, and if not material to direct them that the plaintiff was entitled to recover. It was expressly decided that by the contract of the parties, the truth of the representations and not their materiality were alone in question, and if untrue, the insurer was not liable. That decision was followed in Cazenove v. British Assur. Co. (1859) 95 E. C. L. 437, and by the leading case of Campbell v. New England Ins. Co., 98 Mass. 381, 403, and in the well considered judgment in Price v. Phoenix Ins. Co., 17 Minn. 497 [Gil. 473].

These cases hold that where the insurer puts specific questions touching the risk, under conditions like those here agreed upon, the inquiries are conclusively made material and that false answers avoid the policy. It is not necessary in the case at the bar to go to the extent of affirming that all possible questions and answers are material, or may be made so, for here it is manifest that the questions, upon the answers to which the defense is based, pertaining to the habits of the applicant, in a matter material to health and to diseases he had had or was liable to have, were reasonable, and correct answers to which were essential, that the risk to be assumed by the company might be understood. In Anderson v. Fitzgerald, supra, Lord Chancellor Cranworth observed, that "whether certain statements are or are not material,

where parties are entering into a contract of life assurance, is a matter upon which there must be a divided opinion Nothing, therefore, can be more reasonable than that the parties entering into that contract should determine for themselves what they think to be material, and if they choose to do so, and to stipulate that unless the assured shall answer a certain question accurately, the policy or contract which they are entering into shall be void, it is perfectly open for them to do so, and his false answer will then avoid the policy. Now it appears to me, my lords, that this is precisely what has been done here. The question for the jury to decide was simply whether it (the answer) was false or not. In that narrow compass the whole case lies."

I cannot refrain from observing, that it may be questionable whether the practice of the companies is, after all, so entirely reasonable, as it appeared to the lord chancellor. Life insurance has grown to such immense proportions as to have important public relations. It is the method which has been largely adopted to make provision for wife and children, and for those dependent upon the life of the assured. The judgments of courts touching the validity of policies cannot be too carefully considered, so as not to work injustice either to the insurer or the insured. Courts, by a too liberal extension of the doctrine of warranties, and by recognizing the validity for provisions of forfeiture of the rights of the assured, and particularly in allowing the parties, by sweeping language, not fully understood or considered by the assured, when the policy is effected, to make immaterial questions and answers material, have, in my judgment, inclined too much in favor of the companies, and hence the judicial tendency of late is to uphold, rather than overturn the contract, when substantial justice requires it.

In view of the fact, that the tables upon which the expectation of life is calculated, give the average mortality of persons as they run, while the companies select their risk, so that the actual mortality falls below the assumed mortality, and in view of the practice of the companies to put a multitude of questions to the applicant, and to make correct answers to all of them material, I am inclined to consider the legislation of Missouri as well-timed and necessary to prevent the unfair practice of the companies in framing their policies, though it is perhaps too broad, if it prevents the companies from providing that wilful misrepresentation as to material facts will avoid the policy, although it may chance that the misrepresented matters did not actually contribute to the death of the assured. But as the act does not apply to the case in hand, I forbear further remarks upon its policy or meaning.

As the questions in this case were material, and the answers untruthful in material respects, and as the parties, in the policy itself, agreed that this should vitiate the policy, the judgment must be for the defendant.

Judgment accordingly.

[NOTE. Conover v. Phoenix Mut. Life Ins. Co., Case No. 3,143, is published in 3 Dill. 217, as a note to this case.]