DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

## AT JUNE TERM, 1876.

---

THE AMERICAN POPULAR LIFE INSURANCE COMPANY, PLAINTIFFS IN ERROR, v. WILLIAM E. DAY, EXECUTOR, &c., OF FREDERICK DAY, DECEASED, DEFENDANT IN ERROR.

1. The power of amendment conferred by the one hundred and thirty-eighth section of the Practice Act of 1874, extends to the Court of Errors, and in cases where no injury has been done to the party complaining, by or through error of mere form, it is incumbent on this court, in the interest of justice, to exercise the power.

2. Although a proposal and application for a policy of life insurance, contains an agreement on the part of the insured, that the answer to the questions annexed to them, and the accompanying statements made to the examining physician, shall be the basis and form part of the contract and policy between the insured and the company, yet if the policy does not, directly or indirectly, so declare, it will be assumed that all previous negotiations have been superseded, and that the policy alone expresses the contract between the parties.

3. The fact that the policy declares that the insurance is in consideration of the representations made to the company in the application for the policy, cannot have the effect of changing the character of the repre-

sentations in the application, and elevating them to the importance of warranties or conditions of insurance.

4. Reasonable discretion must be accorded to a judge at *Nisi Prius*, in allowing or overruling questions to witnesses on direct examination, which inquire as to matter not in itself pertinent, and which can only become so by the introduction of other evidence which is clearly pertinent.

In error to the Supreme Court.

This was an action of *assumpsit*, founded upon a policy of insurance, issued under seal by the plaintiffs in error, upon the life of Frederick Day, deceased, the testator of the defendant in error, in his lifetime, and dated October 29th, 1868, for $10,000.

The declaration was filed December 10th, 1874, and the defendant's pleas were filed February 15th, 1875. An order was entered May 31st, 1875, striking out all of the defendant's pleas, except the first, which was the general issue.

The cause came on to be tried before Justice Van Syckel and a jury, at the Union Circuit, in September, 1875, and a verdict was rendered in favor of the plaintiffs, against the defendant, for the whole amount claimed and interest.

For the plaintiffs in error, *George E. Sibley*, of New York, and *T. N. McCarter*.

For the defendant in error, *W. J. Magie* and *Cortlandt Parker*.

The opinion of the court was delivered by

THE CHANCELLOR. The defendant in error brought an action of *assumpsit* in the Supreme Court, on a policy of insurance issued by the plaintiffs in error to the testator, Frederick Day, upon his own life. The company pleaded the general issue and five special pleas, which latter were, on motion, stricken out. The trial of the issue resulted in a verdict against the company and judgment thereon. The com-

pany insist that the form of the action was erroneous ; that the order striking out the pleas was illegal, and that there was error in the exclusion, on the trial, of evidence offered in their behalf, and in the admission of evidence on behalf of the executor, and in the refusal of the judge to charge as requested by their counsel.

The policy was under seal. The action should, therefore, have been covenant instead of *assumpsit*. It does not appear, however, and it is not even alleged, that the company, by reason of this error, have lost or been deprived of any right or advantage whatever, or have been in any way prejudiced. Their defence has not been in any wise abridged or limited or affected by it, nor has their adversary had any advantage on account of it. The objection, therefore, is purely technical. Inasmuch as it is so, and involves no merits, the power of amendment will be exercised. *Ruckman* v. *Bergholz*, 8 *Vroom* 437, 439.

The one hundred and thirty-eighth section of the practice act, (*Rev.*, 1874, *p.* 625,) is of a highly remedial character, and should be so construed as, in its own language, " to prevent the failure of justice by reason of mistakes and objections of form." The power of amendment thereby conferred, extends to this court, and in cases where no injury has been done to the party complaining, by or through error of mere form, it is incumbent on this court, in the interest of justice, to exercise the power.

The errors assigned upon the striking out of the special pleas, and that assigned upon the refusal of the judge at the circuit to charge as requested by the company's counsel, may be considered together. The pleas were stricken out, on the ground that the alleged misrepresentations therein set up in avoidance of the liability of the company under the policy, were not therein stated to have been material and intentionally or fraudulently made, and the refusal to charge, just referred to, was on a request to charge that, under the terms of the policy and the application for insurance, the statements and representations made by the insured, became part of the

contract, and that their falsity was a defence to the action, whether the untruth was intentional or not. When application was first made by the testator for the insurance, the agent of the company through whom it was made wrote down in pencil, on a paper intended as a proposal for insurance, the testator's answers to certain printed questions thereon, relative to subjects on which the company deemed it proper, according to their regulations, to have answers in that connection. This paper was not signed by the testator. Afterwards, another like paper, containing like questions, with answers by the testator, and signed by him, was delivered to the company as an application for the insurance. Both these papers contained these words : " And I hereby further agree that the preceding answers given to the annexed questions, and the accompanying statements, together with the statements made to the examining physician, shall be the basis and form part of the contract or policy between me and the said company, and if the same be not in all respects true and correctly stated, the said policy shall be void, according to the terms thereof."

The policy declared that the insurance was " in consideration of the representations made " to the company, and of the premiums paid and to be paid. It further stated that it was issued and accepted by the insured, upon certain express conditions therein stated, among which was the following : " Fraud or intentional misrepresentations vitiates the policy." No reference, except as above stated, was made to the proposal or application, or either of them, or the matters therein contained, or to any statements or representations by the insured. The counsel of the company insist that the statements contained in the proposal and application, were, by virtue of the agreement above quoted, therein contained, made part of the policy, and that they were, therefore, in fact, warranties or conditions, on the truth of which the liability of the company was based, and that, therefore, the question of their materiality or of the knowledge of the testator that they were untrue, or of his intention in making them, was not involved.

Whether the statements in question are warranties, or con-

ditions, or representations merely, will depend on whether they, in fact, are incorporated into the policy. "It is," said Lord Ellenborough, in *Robertson* v. *French*, 4 *East* 130, 135, "a question of construction in every case, whether a policy is so worded as to make the accuracy of a *bona fide* statement a condition precedent, and the rules of construction are the same in policies as in other written contracts." "In order to make any statements binding as warranties," says Bunyon, "they must appear upon the face of the instrument itself by which the contract of insurance is effected; they must either be expressly set out or by inference incorporated in the policy. If they are not so, they are not warranties, but representations." *Bunyon on Life Assur.* 34. See also *May on Ins.*, § 159. In *Wheelton* v. *Hardisty*, 8 *El. & B.* 232, where a policy of life insurance recited that the assured, being interested in the life of J., were desirous of effecting such assurance as was thereinafter expressed, with the association, and had caused to be delivered into the office of the association a proposal for assurance, in writing, bearing date the 8th of September, 1852, whereby it was declared that the age of said J. did not exceed thirty-five years; that he had not had rupture, or any fit or convulsions, since childhood, or gout, asthma, insanity or spitting of blood; that he had not had any habitual cough or any disease of the lungs or heart, or any other disease or disorder tending to the shortening of life, and that the association had *thereupon* undertaken the proposed assurance, subject to the terms and conditions therein and thereunder expressed, but among the conditions was no reference to the proposal, or its statements or any matter therein contained, it was held that there was no warranty of the truth of the matters recited in the policy to have been declared in the proposal, or anything in the nature of the contract showing an intention that the truth of these matters should be the basis of the contract.

In *Anderson* v. *Fitzgerald*, 4 *H. of L. Cas.* 484, it was, indeed, held that misrepresentation in either of two particulars not specified in the statement of the subjects of warranty

in the policy, but mentioned in the proposal for insurance which the parties had agreed should form the basis of the contract between the insured and the company, would avoid the policy and forfeit the moneys paid ; but in that case, the policy was so framed as to make the accuracy of the preliminary statement a condition precedent to the validity of the policy.    The policy contained a proviso which provided, among other things, that if any circumstance, material to the insurance, should not have been truly stated or should have been misrepresented or concealed, or should not have been fully and fairly disclosed and communicated to the company, or if any fraud should have been practiced on the company, or any false statements made to them in or about the obtaining or effecting of the insurance, the policy was to be null and void, and all moneys paid by the insured, or in his behalf, on account of the insurance, should be forfeited.    When, in *Pawson* v. *Watson, Cowp.* 785, Lord Mansfield was asked, in behalf of the underwriters, " Whether it was the opinion of the court that, to make written instructions valid and binding as a warranty, they must be inserted in the policy, he answered, that that was most undoubtedly the opinion of the court." To hold that the statements of the proposal and the application, notwithstanding the agreement therein above quoted, are not incorporated into the policy, and, therefore, are not warranties or conditions of insurance, is but to apply the rule that where the parties to an agreement have reduced their contract to writing, that writing, at law, determines what the contract is, and evidence cannot be received to contradict, add to, subtract from or vary the terms of the writing.    The policy in this case is the agreement for insurance, and it must be held to contain the agreement, and all the agreement, of the parties to it.    Though the proposal and application contain an agreement on the part of the insured, that the answers to the questions annexed to them and the accompanying statements, together with the statements made to the examining physician, shall be the basis and form part of the contract or policy between the insured and the company, yet the policy does not,

directly or indirectly, so declare, and it will be assumed that all previous negotiations have been superseded and that the policy alone expresses the contract of the parties.

But it is urged on the part of the company, that inasmuch as the policy declares that the insurance is in consideration of the representations made to the company in the application for the policy, this is sufficient to give the representations the character of conditions or warranties. It is to be observed that the policy refers to the representations as representations only, giving them no higher or more important character. Almost all contracts of insurance are based on confidence in representations, in respect to the subject of the insurance, and the consequences of falsehood in those representations are well understood. The expression under consideration, therefore, has no particular significance. It cannot have the effect of changing the character of the representations in the application and elevating them to the importance of warranties or conditions of insurance. *Campbell* v. *N. E. Mu. Ins. Co.*, 98 *Mass.* 381; *Price* v. *Phœnix Mutual Life Ins. Co.*, 17 *Minn.* 497. There was no error in striking out the special pleas. They were based on the erroneous assumption that the representations in the proposal and application were warranties or conditions of insurance. For the same reason, there was no error in the refusal to charge.

The company insist that there was error in the overruling of the questions put to witnesses on the trial, in reference to the testator's habits or practice as to the use of intoxicating liquors after the date of the policy. The questions were put with a view to proving his habit and practice at or prior to the date of the policy, and it was probably because they had reference only to a period subsequent to that date, that they were overruled. Had the questions been directed to the time of the date of the policy, or time anterior thereto, they would have been allowed, and, probably, if the habit or practice sought to be proved had been shown to have existed then, the questions objected to would not have been regarded by the judge as unlawful. Reasonable discretion must be

accorded to a judge at *Nisi Prius*, in allowing or overruling questions to witnesses on direct examination, which inquire as to matter not in itself pertinent, and which can only become so by the introduction of other evidence which is clearly pertinent. And if, after a question has been overruled on the ground of impertinence or immateriality, evidence is introduced which may tend to remove the objection, fairness demands that the offer be renewed.

The questions overruled in this case were these: "Has he, since October, 1868, been in the habit of using intoxicating drinks?" "How soon after 1868 did you know, if at all, of his drinking intoxicating liquors?" "How long did the habit, such as you saw, of his drinking, prior to 1868, continue after that time?" The policy was issued, as before remarked, in October, 1868. The insured died April 10th, 1874. These questions were asked with a view to establishing the fact that he was in the habit of drinking intoxicating liquors at and prior to the date of the policy. The first of the questions had a range through a period of five years and a half after the issuing of the policy. If he was in the habit, at any time during that period, of drinking intoxicating liquors, the fact, of itself, established nothing material to the issue. Nor would the fact that he was in the habit of drinking such liquors after the date of the policy, have been any evidence of his use, habitual or occasional, of intoxicating drinks before that time. The last question, "How long did the habit, such as you saw, of his drinking, prior to 1868, continue after that time?" was, under the circumstances, improper. It assumed that the witness had testified to a habit of drinking prior to 1868, which was not the fact. He had given no testimony to justify the assumption. The question, therefore, was clearly objectionable, and was properly overruled. The question, "How soon after 1868 did you know, if at all, of his drinking intoxicating liquors?" was, in like manner, and for a similar reason, objectionable. The witness had not testified to any knowledge of the habits of the insured, nor that the latter drank intoxicating drinks

at all.  He had testified to nothing whatever on the subject. The only ground on which it could be claimed that the first two questions, "Has he, since October, 1868, been in the habit of using intoxicating drinks?" and, "How soon: after 1868 did you know, if at all, of his drinking intoxicating liquors?" were pertinent, would be the possibility that there would be evidence in the cause of habitual use of intoxicating drinks by the insured at or prior to the date of the policy. But if such testimony had been introduced, the evidence objected to would have been unnecessary, and would still, strictly considered, have been immaterial and impertinent, except as by way of corroboration; it might furnish ground for the argument that the habit existed prior to or at the date of the policy.  When these questions were asked, there was no evidence whatever in the cause, on the subject of the use of intoxicating drinks by the insured, and, after the testimony on that subject had been introduced, there was no renewal of the offer of the rejected testimony.  Of the three questions overruled, one of them was so objectionable in form as to justify the judge in overruling it on that account alone, and, as to the other two, the judge, as the case then stood, lawfully exercised his discretion in overruling them.

The testimony which is claimed to have been unlawfully admitted in behalf of the executor, was evidence in regard to the statements made in the immediate family of the insured as to the cause of the disease of which one of his uncles had died, before the policy was applied for, and when the insured was but a child.  The executor sought, by this evidence, to prove that the cause of the disease was reputed and stated, in the family, to be injury from a strain, and the object of the proof was to rebut any presumption of wilful or intentional misstatement by the insured as to the cause of the disease.  In this view the evidence was competent.

It is further insisted that there was error in the charge as to the statements of two persons, to whom, in making proof of loss, the executor, at the request of the company, referred them, as being disinterested acquaintances of the testator, and

whose statements in regard to the latter would constitute part of the proofs of loss. These statements were made in pursuance of a request of the company, that the executor would name disinterested acquaintances of the insured, to whom they might apply " for information to enable them to judge of the identity of the person, the justness of the claim, &c." The charge on this score was, that the executor was bound by the statements of these persons with regard to the proof of death, but not by any other statement upon any other subject, and that the statements made by them in regard to the habits of the insured were merely hearsay, and were not to be regarded by the jury. The limit put by the charge to the extent to which the statements under consideration were to be received as evidence, was just. It would be exceedingly unreasonable, to say the least of it, to hold a party making proof of loss, bound by the statements, whatever they might be, which an acquaintance of the deceased, whose name he gives to the company, for their satisfaction as to the identity of the deceased with the insured, and the justness of the claim, might choose to make with respect to matters other than those which are connected with the proof of the death of the insured. There is no error in the record. The judgment of the Supreme Court should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, DIXON, KNAPP, REED, WOODHULL, CLEMENT, DODD, GREEN, LILLY.   11.

*For reversal*—None.